IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLA G. ALDOUS, P.C. d/b/a ALDOUS LAW FIRM AND CHARLA ALDOUS, | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL ACTION NO. 3:13-cv-03310-L |
| HOLLY MS. BLACK AND DARWIN NATIONAL ASSURANCE COMPANY, | | |
| Defendants. | | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiffs Charla G. Aldous, P.C. d/b/a Aldous Law Firm and Charla Aldous ("Ms. Aldous") (collectively, "Plaintiffs") hereby amend their pleading as a matter of course and complain of Defendant Darwin National Assurance Company ("Darwin") and Defendant Teresa Lugo ("Ms. Lugo") (collectively "Defendants") for the following reasons:

### I. THE PARTIES

1.   Charla G. Aldous, P.C. d/b/a Aldous Law Firm is a law firm based in Dallas County, Texas.  Charla G. Aldous, P.C. d/b/a Aldous Law Firm is a citizen of the State of Texas.

2.   Ms. Aldous is an individual resident of Dallas County, Texas, and is an insured under the insurance policy at issue in this case.  Ms. Aldous is an individual citizen of this State.

3.   Darwin is a foreign insurance company that is authorized to do business in this state.  Darwin already has answered and is before the court for all purposes.

4. Ms. Lugo is an individual citizen of this state. Ms. Lugo already has answered and is before the court for all purposes.

## II. JURISDICTION AND VENUE

5. This court lacks jurisdiction of this dispute because Ms. Lugo and Plaintiffs are both citizens of the State of Texas and Darwin—for the second time—has improperly removed this case from County Court at Law No. 1 for Dallas County, Texas, falsely claiming diversity grounds. Pursuant to 28 U.S.C. § 1447(c), Plaintiffs reserve their right to move the Court to remand this case to Texas state court for lack of subject-matter jurisdiction and to seek appropriate sanctions.

## III. BACKGROUND

A. Ms. Lugo's Representations to Ms. Aldous—

6. Ms. Aldous has long been recognized as one of the top trial attorneys in the United States. Her awards and accolades are too numerous to mention. Having started her career as a defense lawyer paid by insurance companies, she now represents individuals in catastrophic personal injury lawsuits and complex commercial litigation.

7. Ms. Aldous practices law through her professional corporation, Charla G. Aldous, P.C., which does business as Aldous Law Firm. In the Winter or early Spring of 2010, Ms. Aldous was in the market to retain an insurance agent to assist her in procuring professional liability insurance for her and her firm. During this process, she personally interviewed Ms. Lugo.

8. At all relevant times, Ms. Lugo was an account manager with HUB International Rigg in Dallas, Texas ("HUB"). In persuading Ms. Aldous to do business with her, Ms. Lugo represented that she could provide superior insurance services and products through HUB

because it was a global insurance brokerage with some 250 offices in North America. Ms. Lugo also represented that she and HUB had special knowledge in serving the legal industry, and specifically were experts with respect to legal professional liability insurance.

9. During their discussions, Ms. Lugo touted HUB's access to and knowledge of the best professional liability insurers in the country. Ms. Aldous stressed that she had two primary requirements for anyone she would retain as her agent: First, the agent must ensure that Ms. Aldous and her firm be placed with an insurer with a well-established reputation of paying claims. Indeed, Ms. Aldous told Ms. Lugo, "I want a carrier that won't fight over claims. If I get sued, the last thing I want to do is have to jack with my carrier." Second, Ms. Aldous told Ms. Lugo that she required an insurer that did a large amount of business locally, and, in the event of a claim, would assign a local adjuster, with knowledge of and ties to the community.

10. Ms. Lugo represented to Ms. Aldous that she could and would find an insurer that met both of Ms. Aldous's requirements. In fact, Ms. Lugo led Ms. Aldous to believe that she would place Ms. Aldous' policy with an insurer that would give Ms. Lugo input on assigning the adjuster in the event of a claim. Ms. Lugo stated that she could and would assist Ms. Aldous in the event of a claim.

11. Ms. Aldous justifiably relied on Ms. Lugo's representations, and chose Ms. Lugo to act as her agent based upon them.

B.   <u>The Darwin Policy and the Claim</u>—

12. Effective March 1, 2010, Darwin agreed to provide Plaintiffs with professional liability coverage in accordance with the terms of Policy No. 0304-4657 (the "Policy").

13. On February 15, 2011, Albert G. Hill III ("Hill III") made a Claim—as that term is defined in the Policy—against Ms. Aldous and others in a pending lawsuit in which Ms.

Aldous was seeking to recover the attorney's fees she previously had earned representing Hill III but which he contested and failed to pay (the "Lawsuit"). Ms. Aldous notified Ms. Lugo of the Claim, and requested Ms. Lugo to assign the adjuster and assist her with the Claim as her advocate with Darwin, as Ms. Lugo had represented she would do.

14. Ms. Lugo failed to do so, however. Instead, Darwin appointed an adjuster based in Connecticut who worked for a different insurance company that is not even licensed to write insurance business in Texas.

C.  Darwin Breaches its Obligations—

15. As a result of the Claim, among other rights and benefits under the Policy, Ms. Aldous was entitled to a defense against the Claim, including payment of all the reasonable and necessary attorney's fees, costs and expenses incurred in defending against the Claim in the Lawsuit.

16. Darwin failed to meet all of its obligations under the Policy. For example, Darwin arbitrarily refused to pay all of the fees and expenses Ms. Aldous incurred as part of her defense in the Lawsuit. Indeed, Darwin represented to Ms. Aldous that the law and certain provisions in the Policy allowed it to pay less than 100% of the defense expenses incurred by Ms. Aldous' attorney. In this connection, Darwin represented to Ms. Aldous that it had investigated the defense expenses incurred with respect to certain of her attorney's bills and determined that more than 50% of them were unrecoverable by her under the Policy because they allegedly related to pursuing Plaintiffs' affirmative claims to recover attorneys' fees. Darwin did this even after Ms. Aldous' law firm already had made an allocation of fees supposedly relating solely to the affirmative claims.

17. Further, Darwin represented that it had the right to refuse to pay expenses such as secretarial overtime and computer research pursuant to its billing guidelines. Those guidelines, however, were not part of the Policy, and Ms. Aldous never agreed to them.

18. Darwin's representations were false, and Darwin knew it. It knew that, if an insurer has a duty to defend one covered claim, it has a duty to defend all claims whether covered by the Policy or not. Darwin also knew that many of the claims it had a duty to defend were inextricably intertwined with the affirmative claims. Thus, Darwin knew that it would be required to defend those claims even if an affirmative claim for fees had not been made, and that it, therefore, unlawfully was seeking to shift some of the costs of defense it owed to Plaintiffs based upon its arbitrary allocation. Darwin's representation that it was entitled to make this allocation misrepresented the Policy and the law.

19. Darwin also knew or should have known that, if an insured's affirmative claims have the effect of reducing or eliminating the insured's liability, the costs of prosecuting such claims are encompassed in an insurer's duty to defend. This necessarily was the case in the Lawsuit where the affirmative and defensive claims were inextricably intertwined, with the success or failure of each depending upon the outcome of the other.

20. Darwin, which knew or should have known that its arbitrary reduction of the amount of defense costs it ultimately paid on Ms. Aldous' behalf was unlawful, apparently intended to take advantage of Ms. Aldous' lack of specialization in insurance coverage law and shortchanged her by hundreds of thousands of dollars.

21. Of course, Ms. Aldous naturally was under a great deal of stress throughout the entire period of the Lawsuit, which Darwin knew or should have known. Darwin's conduct described herein was malicious, intentional, fraudulent or grossly negligent. Darwin's

misconduct—at this critical time when Ms. Aldous was entitled to a full and supportive defense—resulted in Ms. Aldous suffering a high degree of mental pain and distress that substantially disrupted her daily routine. Ms. Aldous' resulting mental anguish was more than mere worry, anxiety, vexation, embarrassment or anger, but was akin to the mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and public humiliation.

D.   Darwin Demands Repayment—

22.   Ms. Aldous won the Lawsuit and obtained a judgment against Hill III. That judgment remains unpaid, and Ms. Aldous continues to incur legal expenses trying to defend that judgment. Subsequent to the judgment, Darwin has written a series of letters to Ms. Aldous demanding that, once she recovers from Hill III, she repay to Darwin the defense costs Darwin paid on her behalf. In these letters, Darwin represented to Ms. Aldous that it was entitled to such reimbursement pursuant to the law and the terms of the Policy. These representations were false. In fact, in recent correspondence, Darwin had the temerity to call Ms. Aldous "unfair and greedy" because she attempted to question Darwin's demands, and has stated that Ms. Aldous would be violating Texas Disciplinary Rules unless she either paid Darwin's demand or set the money aside in a trust account until this dispute is resolved.

## V.   CAUSES OF ACTION

### COUNT I

### NEGLIGENT MISREPRESENTATION AGAINST MS. LUGO

23.   At all relevant times, Ms. Lugo professed to Ms. Aldous that she had special knowledge in the field of lawyer's professional liability insurance procurement and recovery. Among other reasons, Ms. Lugo was guilty of negligent misrepresentations when she told Ms. Aldous that 1) she would place Ms. Aldous' insurance with an insurer with a well-established

reputation of paying claims; 2) she would place Ms. Aldous' insurance business with an insurer that did a large amount of its business locally, and, in the event of a claim, would assign a local adjuster, with knowledge of and ties to the community; 3) she would place Ms. Aldous' policy with an insurer that would give Ms. Lugo input on assigning the adjuster in the event of a claim; and 4) Ms. Lugo would have influence with the adjuster, which she could and would use to assist Ms. Aldous in obtaining timely coverage and payment for any claim.

24. Ms. Lugo made these misrepresentations in the course of her business, supplying false and misleading information for Plaintiffs' guidance in their business, and Ms. Lugo did not exercise reasonable care or competence in obtaining or communicating this information.

25. Plaintiffs justifiably relied on Ms. Lugo's negligent misrepresentations and suffered pecuniary and economic loss as a result.

## COUNT II

## FRAUDULENT INDUCEMENT BY MS. LUGO

26. Plaintiffs incorporate by reference all previous allegations in this Complaint as though fully set forth herein.

27. Ms. Lugo falsely represented to Ms. Aldous that she would place Ms. Aldous' insurance business with an insurer that did a large amount of its business locally, and, in the event of a claim, would assign a local adjuster, with knowledge of and ties to the community. This statement was material to Plaintiffs' decisions to hire HUB as her insurance broker and to purchase the Policy from Darwin.

28. Ms. Lugo made this false representation intending for Plaintiffs to act in reliance on it by hiring HUB as their insurance broker and purchasing insurance from the insurer whom she recommended to Plaintiffs.

29. At the time, Ms. Lugo made this representation she knew the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth because she had no intention, and in fact did not, place Ms. Aldous' insurance business with the type of insurer requested by Ms. Aldous. As alleged above, when Plaintiffs made a claim under the Policy, Darwin appointed an adjuster based in Connecticut who worked for a different insurance company that is not even licensed to write insurance business in Texas.

30. Plaintiffs justifiably relied to their detriment on Ms. Lugo's false representation regarding the type of insurer with whom she would place Plaintiffs' business. As a direct and proximate result of Ms. Lugo's false representation, Plaintiffs hired HUB as their insurance broker and purchased the Policy from Darwin.

31. Plaintiffs did not discover Ms. Lugo's fraud and could not through the exercise of reasonable diligence, known of it until approximately February 25, 2011, at the earliest, when Darwin appointed an adjuster who apparently was based in Connecticut.

32. As a result of Ms. Lugo's fraud, Plaintiffs have suffered pecuniary and economic loss. Additionally, Plaintiffs are entitled to benefit-of-the-bargain damages as a result of Ms. Lugo's fraud.

## COUNT III

## FRAUD BY MS. LUGO

33. Plaintiffs incorporate by reference all previous allegations in this Complaint as though fully set forth herein.

34. Ms. Lugo also committed fraud by failing to disclose material facts within her knowledge. As Plaintiffs' insurance agent, Ms. Lugo owed Plaintiffs a duty to disclose to them that Darwin was not an insurer that did a large amount of its business locally, and, in the event of a claim, would assign a local adjuster, with knowledge of and ties to the community. Ms. Lugo

knew that Plaintiffs did not know or have an equal opportunity to discover this fact, but deliberately remained silent.  By failing to disclose this fact, Ms. Lugo intended to induce Plaintiffs to purchase the Policy.  Plaintiffs justifiably relied on Ms. Lugo's nondisclosure by purchasing the Policy and were injured as a result of acting without the knowledge of the undisclosed fact.

35.     Plaintiffs did not discover Ms. Lugo's fraud and could not through the exercise of reasonable diligence, known of it until approximately February 25, 2011, at the earliest, when Darwin appointed an adjuster who apparently was based in Connecticut.

36.     As a result of Ms. Lugo's fraud, Plaintiffs have suffered pecuniary and economic loss.  Additionally, Plaintiffs are entitled to benefit-of-the-bargain damages as a result of Ms. Lugo's fraud.

## COUNT IV

## BREACH OF THE INSURANCE CONTRACT BY DARWIN

37.     Darwin has failed to acknowledge and pay to Plaintiffs the amount to which they are entitled under the Policy.  Its failure to do so constitutes a breach contract, for which Plaintiffs now sue.

38.     Plaintiffs have fulfilled all conditions precedent to their recovery under this cause of action.

## COUNT V

## DARWIN'S VIOLATIONS OF TEX. INS. CODE CHAPTER 541

39.     By engaging in the conduct described above, Darwin not only has breached its contractual obligations to Plaintiffs, but has violated § 541.060 of the Texas Insurance Code as follows:

    a.   misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

    b.   failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; and

    c.   refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

40.    Darwin committed this wrongful conduct knowingly. Additionally, Darwin's conduct described herein was malicious, fraudulent or grossly negligent. Plaintiffs have fulfilled all conditions precedent to their recovery under this cause of action. Plaintiffs have sustained actual damages as a result of this conduct, for which they now sue. Further, Ms. Aldous has suffered consequential and noneconomic damages, including damages for mental anguish, for which she now sues.

## COUNT VI

## DARWIN'S VIOLATIONS OF TEX. INS. CODE CHAPTER 542

41.    Darwin's conduct also violated § 542.003 of the Texas Insurance Code as follows: a) knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue; b) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear; and c) compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder.

42.    Darwin committed this wrongful conduct knowingly. Additionally, Darwin's conduct described herein was malicious, fraudulent or grossly negligent. Plaintiffs have fulfilled all conditions precedent to their recovery under this cause of action. Plaintiffs have sustained actual damages as a result of this conduct, for which they now sue. Further, Ms. Aldous has

suffered consequential and noneconomic damages, including damages for mental anguish, for which she now sues.

## COUNT VII

### PLAINTIFFS' INVOCATION OF THEIR RIGHTS UNDER TEX. INS. CODE §§ 541.152, 542.058, AND 542.060

43. Pursuant to Texas law, and for the reasons described in this petition, Plaintiffs seek to recover a) the amount of actual damages, plus court costs and reasonable and necessary attorney's fees; b) additional damages in an amount three times the amount of actual damages, all as provided in § 541.152 of the Texas Insurance Code; and c) any other relief the court deems proper.

44. Additionally, Plaintiffs invoke their rights under § 542.058 of the Texas Insurance Code to recover the penalties set forth in § 542.060, including 18% interest and attorneys' fees.

45. Darwin committed this wrongful conduct knowingly. Additionally, Darwin's conduct described herein was malicious, fraudulent or grossly negligent. Plaintiffs have fulfilled all conditions precedent to their recovery under this cause of action. Plaintiffs have sustained actual damages as a result of this conduct, for which they now sue. Further, Ms. Aldous has suffered consequential and noneconomic damages, including damages for mental anguish, for which she now sues.

## COUNT VIII

### TEXAS DECEPTIVE TRADE PRACTICES ACT VIOLATIONS BY DARWIN

46. For the reasons set forth above, Darwin violated § 17.46(b)(12) of the Texas Business & Commerce Code. For example, Darwin violated this provision by stating that the Policy allowed Darwin to pay less than the 100% of the defense expenses incurred in defending against the Claim.

47. Additionally, Darwin's unlawful acts were unconscionable under § 17.50(a)(3) of the Texas Business & Commerce Code because they attempted to take advantage of Ms. Aldous' lack of knowledge, ability, experience, and/or capacity with respect to interpreting the Policy to a grossly unfair degree. The resulting unfairness to Ms. Aldous glaringly is noticeable, flagrant, complete and unmitigated.

48. Finally, Darwin also is liable under § 17.50(a)(4) of the Texas Business & Commerce Code because its conduct violated Chapters 541 and 542 of the Texas Insurance Code, as outlined above.

49. Darwin's wrongful conduct was intentional, knowing, and a producing cause of damages to Ms. Aldous, who is entitled, therefore, to all the relief contained within the DTPA, including, but not limited to, economic damages, noneconomic and consequential damages, including mental anguish damages, attorneys' fees, interest, costs, and treble damages, for which she now sues. Additionally, Darwin's conduct described herein was malicious, fraudulent or grossly negligent.

50. Ms. Aldous has fulfilled all conditions precedent to her recovery under this cause of action.

## COUNT IX

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING BY DARWIN

51. Darwin owed Plaintiffs a duty of good faith and fair dealing, which required it to (1) perform its duties and obligations under the Policy in a reasonable and timely manner, and (2) properly handle the Claim. Darwin's actions described above were wanton, reckless, malicious and/or intentional in disregard to Plaintiffs' rights under the Policy. Additionally, Darwin's conduct described herein was malicious, fraudulent or grossly negligent. As a result of Darwin's actions, Plaintiffs have suffered economic damages in an amount to be determined by

the trier of fact, for which damages they now sue. Finally, Ms. Aldous has suffered consequential and noneconomic damages, including damages for mental anguish, for which she now sues.

## COUNT X

## ATTORNEYS' FEES AND COSTS

52. Pursuant to applicable law, including, but not limited to, Tex. Civ. Prac. & Rem. Code § 38.001, the Texas Insurance Code and the Texas Deceptive Trade Practices Act, Plaintiffs hereby sue Darwin for costs of court, and reasonable and necessary attorneys' fees. Plaintiffs have fulfilled all conditions precedent to recovery of their fees and costs.

## COUNT XI

## ADDITIONAL AND EXEMPLARY DAMAGES

53. Further, Plaintiffs seek exemplary damages against Darwin because its wrongful conduct was undertaken with a state of mind that justifies the imposition of exemplary damages. Specifically, Darwin acted with malice by specifically intending to cause substantial injury or harm to Plaintiffs. As a result of Darwin's malicious acts, Plaintiffs are entitled to an award of exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003.

54. Plaintiffs also seek exemplary damages against Ms. Lugo because her wrongful conduct was undertaken with a state of mind that justifies the imposition of exemplary damages. In addition to committing fraud as alleged herein, Ms. Lugo acted with malice by specifically intending to cause substantial injury or harm to Plaintiffs. As a result of Ms. Lugo's fraudulent and malicious acts, Plaintiffs are entitled to an award of exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003.

55. Plaintiffs seek such damages not only to punish Defendants for their outrageous conduct, but also to deter other insurers and persons from engaging in the same or similar conduct.

## COUNT XII

## DECLARATORY JUDGMENT AGAINST DARWIN

56. Plaintiffs are persons interested under a written contract whose rights, status or other legal relations are affected by that contract.  Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiffs ask this court to declare their rights pursuant to the contract and Texas law.  Specifically, Plaintiffs ask the court to enter a Declaratory Judgment that includes the following declarations:

>   a. Plaintiffs are entitled to recover from Darwin all the attorney's fees and expenses incurred on their behalf by their law firm from the date they notified Darwin of the Claim forward— whether related to Plaintiffs' defensive or affirmative claims;
>
>   b. Darwin had a duty to defend Plaintiffs in the Lawsuit because there was at least one covered claim.  As a result, Darwin had a duty to pay for the entire defense, whether or not all of the claims against Plaintiffs were covered.  Further, some of the claims Darwin was required to defend were inextricably intertwined with Plaintiffs' affirmative claims for relief.  Accordingly, Darwin has the duty to pay for the fees and expenses necessary to pursue the affirmative claims because all of that work was necessary to defend Plaintiffs, and Darwin had a legal obligation to pay for the defense;
>
>   c. Darwin's position is inequitable because it is seeking to offload part of its obligation to defend the case on Plaintiffs simply because Plaintiffs were seeking to recover in the Lawsuit;
>
>   d. Plaintiffs' affirmative claims in the Lawsuit had the effect of reducing or eliminating their liability to on the Claim;
>
>   e. Plaintiffs affirmative and defensive claims in the Lawsuit, other than the negligence claim, were inextricably intertwined, with the success or failure of each depending upon the outcome of the other;

    f.    Plaintiffs are entitled to a declaration that the fees and costs incurred in prosecuting their affirmative claims against the claimant from the date they notified Darwin of the Claim forward are encompassed within Darwin's duty to defend;

    g.    Alternatively, Plaintiffs are entitled to recover from Darwin at least all of the attorney's fees and expenses incurred other than those that were attributable solely to pursuit of Plaintiffs' affirmative claims;

    h.    If Plaintiffs recover anything in the Lawsuit, including any attorneys' fees Darwin has paid, Plaintiffs have no obligation to reimburse any part of their recovery to Darwin;

    i.    In the event of a recovery by Plaintiffs in the Lawsuit, Darwin would have no right to recover under the Policy's subrogation clause because it is inapplicable to these facts and circumstances. Alternatively, Darwin would not be entitled to enforce the subrogation clause in the Policy because Darwin materially has breached the Policy, and is not responsible for recovering anything in the Lawsuit, in any event. Instead, it is the Plaintiffs and others who are pursuing a recovery from the Defendants in the Lawsuit, not Darwin;

    j.    There otherwise was no agreement to pay Darwin any portion of the recovery in the Lawsuit. Instead, Ms. Aldous made an offer, which Darwin rejected. In any event, if an agreement were made, by its express terms, it cannot be interpreted as Darwin alleges;

    k.    Alternatively, if Darwin were entitled to be paid any portion of a recovery by Plaintiffs in the Lawsuit, Plaintiffs shall be entitled to offset the value of Plaintiffs' time, talent and efforts expended in obtaining such a recovery; and

    l.    Plaintiffs have no obligation to hold any money in trust for Darwin during the pendency of this dispute.

## JURY DEMAND

57.    As is their right under the constitutions and laws of the United States and this State, Plaintiffs hereby respectfully request a trial by jury.

WHEREFORE, Plaintiffs respectfully request that they have judgment against Defendants, consistent with their allegations in this pleading, and that they recover their costs, attorneys' fees, pre and post-judgment interest, special damages, including mental anguish damages identified herein, penalties and/or exemplary damages, if applicable, and such other and further relief at law or in equity to which they may be entitled.

Respectfully submitted,

s/ Bobby M. Rubarts
Bobby M. Rubarts
State Bar No. 17360330
bobby.rubarts@koningrubarts.com
Bart Sloan (Of Counsel)
State Bar No. 00788430
bart.sloan@koningrubarts.com
Brent E. Basden
State Bar No. 24047828
brent.basden@koningrubarts.com

**KONING RUBARTS LLP**
1700 Pacific Avenue, Suite 1890
Dallas, Texas 75201
214-751-7900
214-751-7888 – fax

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record who have consented to service by electronic means.

s/ Bobby M. Rubarts
Bobby M. Rubarts