### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLA G ALDOUS PC and** | § | |
| **CHARLA ALDOUS,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV -3310-L** |
| | § | |
| **TERESA LUGO and DARWIN NATIONAL** | § | |
| **ASSURANCE COMPANY,** | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Darwin National Assurance Company's ("Defendant" or "Darwin") Amended 12(b)(6) Motion to Dismiss (Doc. 33) ("Motion"), filed March 12, 2014. After careful consideration of the Motion, pleadings, record, and applicable law, the court **grants in part and denies in part** Defendant's Amended 12(b)(6) Motion to Dismiss ("Motion").

**I.     Procedural and Factual Background**

      **A.     Procedural Background**

This case concerns a dispute over Defendant's alleged obligation to pay attorney's fees incurred by Plaintiffs Charla Aldous ("Aldous") and Charla G. Aldous PC ("Aldous PC") (collectively, "Plaintiffs"). The case was originally brought in County Court at Law No. 1 of Dallas County, Texas on November 14, 2012, against Darwin and Defendant Teresa Lugo ("Lugo"). On August 21, 2013, the action was removed to federal court because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

In Plaintiffs' Fourth Amended Complaint, they assert claims for fraudulent inducement and fraud against Lugo; and claims for breach of the insurance contract, violations of Texas Insurance Code, violations of the Texas Deceptive Trade Practice Act ("DTPA"), and breach of the duty of good faith and fair dealing against Darwin.[1]  Plaintiffs also seek attorney's fees, additional and exemplary damages, and declaratory and injunctive relief from Darwin.

On March 12, 2014, Defendant filed its Motion, urging the court to dismiss Plaintiffs' claims of negligent misrepresentation, Texas Insurance Code violations, DTPA violations, and breach of the duty of good faith and fair dealing.[2]  On September 30, 2014, Plaintiffs filed their Unopposed Motion for Leave to File Fourth Amended Complaint, which the court granted on October 1, 2014. Plaintiffs voluntarily withdrew their negligent misrepresentation claim against Lugo and their damage claim for mental anguish against Darwin.  Plaintiffs' Fourth Amended Complaint is the live pleading, and the court will consider Defendant's Motion with regards to the claims set forth.[3]

### B.      Factual Background

Aldous is an attorney who decided to purchase professional liability insurance for herself and her law firm.  Lugo acted as her insurance agent and assisted her in procuring Darwin, and on March 1, 2010, Darwin agreed to provide Plaintiffs with professional liability coverage.

---

[1] Lugo did not join Darwin's Motion to Dismiss, and the court does not address Plaintiffs' claims against her.

[2] Although Defendant urges the court to dismiss Plaintiffs' negligent misrepresentation claim, Plaintiff's Fourth Amended Complaint does not allege negligent misrepresentation against Defendant, and there is no such claim for the court to dismiss.  Defendant also urges the court to dismiss Plaintiffs' causes of action for Texas Insurance Code violations.  Plaintiffs sue under Texas Insurance Code §§ 541 and 542.  Defendant clearly urges the court to dismiss Plaintiffs' claims under Texas Insurance Code § 541; it is less clear, however, whether Defendant also requests dismissal for claims under § 542.  Defendants Motion makes no mention of § 542 specifically.  Accordingly, the court will deny Defendant's request to dismiss Plaintiffs' claim under Texas Insurance Code § 542, to the extent it even requests dismissal.

[3] Plaintiffs' Fourth Amended Complaint was filed after their Response to Defendant's Motion and renders some of the arguments in their Response moot, as discussed in Section III.A(2).

Aldous was in a dispute with her former client, Albert G. Hill III ("Hill").  On February 15, 2011, she sued him to recover attorney's fees for services she rendered for him, and he, in turn, sued her for legal malpractice (the "Hill lawsuit").  According to Plaintiffs, the contract between Darwin and Plaintiffs (the "Policy") covers Hill's legal malpractice claim ("Hill's claim") and entitles them to recovery.  Plaintiffs allege that Darwin breached its obligation under the Policy because Plaintiffs were entitled to a defense against Hill's claim, including payment of all attorney's fees necessary to defend it.  Both parties agree that the Policy covers at least a portion of the fees.  Darwin argues that Aldous is attempting to collect attorney's fees incurred as to her affirmative claims against Hill and that the parties agreed that if Plaintiffs were awarded fees in the Hill lawsuit, they would reimburse Darwin for the fees it already paid.  Aldous argues that her law firm allocated attorney's fees relating to her affirmative claims and that Darwin knew that if an insurer has a duty to defend one covered claim, it has a duty to defend all claims regardless of whether they are covered.  Pls.' Fourth Am. Compl. ¶ 18.  In other words, Plaintiffs argue that the claims made pursuant to her defense were inextricably intertwined with their affirmative claims.  *Id.* ¶ 58.

 Plaintiffs specifically contend that Darwin represented that it was entitled to pay less than 100% of the defense expenses in accordance with the Policy; that more than 50% of the expenses were unrecoverable because they related to Aldous's affirmative claims; and that it had the right to refuse to compensate for secretarial overtime and computer research.  Plaintiffs allege that Defendant's refusal is not supported by the Policy; that Aldous never agreed to such terms; and that Defendant knew these representations were false.

Aldous eventually won her lawsuit against Hill and obtained judgment.   Plaintiffs additionally allege that Darwin wrongly represented that, once Aldous recovered judgment, it was entitled to reimbursement for attorney's fees it had already paid.  Pl.'s Fourth Am. Compl.  ¶ 21.

Defendant argues it is not liable because: (1) the parties agreed that Darwin was only liable for a limited share of the fees; (2)  denial of coverage does not constitute a misrepresentation under the Texas Insurance Code or the DTPA; (3) Aldous suffered no injury independent from the denial of her claim; and (4) there is no common law duty of good faith and fair dealing to defend against third-party claims.

## II.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (quotation marks,

citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.

**Memorandum Opinion and Order - Page 5**

*R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

## III.   Plaintiffs' Causes of Action

### A.   Texas Insurance Code

In their Fourth Amended Complaint, Plaintiffs allege that Defendant violated the Texas Insurance Code § 541.060, which prohibits unfair settlement practices.  Plaintiffs contend that this section not only applies to misrepresentations made prior to contract formation but also to those made after.  Plaintiffs allege that Defendant violated this section of the Texas Insurance Code by:

> (a) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> (b) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; and
>
> (c) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Pls.' Fourth Am. Compl. ¶ 39 (citing Tex. Ins. Code § 541.060(a)(1), (2)(A), and (7)).

**Memorandum Opinion and Order - Page 6**

Plaintiffs also allege that Defendant violated the Texas Insurance Code, § 541.061, by:

> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and
>
> (4) making a material misstatement of law.

Pls.' Fourth Am. Compl. ¶ 39 (citing Tex. Ins. Code  § 541.061).

To establish a violation of either section of the Texas Insurance Code, Plaintiff must set forth sufficient allegations showing that Defendant acted in bad faith.  "Texas courts have clearly ruled that these extra-contractual tort claims [Texas Insurance Code and the DTPA] require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (citations omitted).  Bad faith causes of action require that the "insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Id.* at 459.

Plaintiffs allege that Darwin violated the Texas Insurance Code by failing to meet its obligations under the Policy and arbitrarily refusing to pay Aldous's expenses.  In this respect, Plaintiffs allege that Darwin made the following misrepresentations:

> • that the law and certain provisions in the Policy allowed it to pay less than 100% of the defense expenses incurred by Aldous's attorney.
>
> • that it investigated the defense expenses and determined that more than 50% were unrecoverable.

**Memorandum Opinion and Order - Page 7**

- that it had the right to refuse to pay expenses such as secretarial overtime and computer research.

- that, once Aldous recovers her judgment in the Hill lawsuit, it was entitled to reimbursement for the attorney's fees it already paid.

Pls.' Fourth Am. Compl. ¶¶ 15-21.  Plaintiffs additionally allege that Defendant committed this conduct knowingly and that they suffered actual damages as a result.

### 1.    Independent Injury Requirement

Defendant contends that Plaintiffs are attempting to recast an alleged failure to fulfill contractual obligations into an actionable claim for misrepresentations under the Texas Insurance Code.  It urges dismissal, arguing that Plaintiffs have not alleged an injury independent of the breach of contract.  Defendant argues that Plaintiffs must allege injuries independent from those arising from the denial of the policy benefits under the Texas Insurance Code § 541 and failed to do so.[4]

In their Response, Plaintiffs contend that they alleged an independent injury by arguing that Aldous is entitled to mental anguish damages.  In their Fourth Amended Complaint, filed after their Response, Plaintiffs removed mental anguish damages from their allegations.  Therefore, this argument is no longer viable and the court will not consider it, as it is not a part of the live pleading. The only remaining argument set forth by Plaintiffs is that claims for violations under Texas Insurance Code do not require allegations of an independent injury.

After thorough consideration of the relevant authorities, the court determines that Plaintiffs must establish an injury independent from the wrongful denial of benefits.  "There can be no recovery against an insurer for extra-contractual damages for mishandling claims unless the complained of

---

[4] Defendant also argues that Plaintiffs fail to allege adequate misrepresentations under the Texas Insurance Code.  The court finds it unnecessary to address this argument, as sufficient grounds exist to dismiss Plaintiffs' claim for failure to allege an independent injury.

**Memorandum Opinion and Order - Page 8**

actions or omissions caused injury independent of that which would have resulted from a wrongful denial of policy benefits." *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198-99 (Tex. 1998)). To recover extra-contractual damages, the Texas Insurance Code "require[s] a showing of independent injury i.e., an insured can only recover for § 541.060 violations if the insurer's complained of actions caused injury independent of a wrongful denial of policy benefits." *Admiral Ins. Co. v. Petron Energy, Inc.*, 1 F. Supp. 3d. 501, 503 (N.D. Tex. 2014) (citing *Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 715 (S.D. Tex. 2013) ("The [plaintiffs] have not pointed to any competent evidence showing that they suffered an injury from the alleged § 541.060 violations independent from the allegedly wrongful denial of policy benefits.")).[5]

Plaintiffs rely on *Vail v. Texas Farm Bureau Mutual Insurance Company*, 754 S.W.2d 129, 136 (Tex. 1988) (holding that plaintiffs "damage is, at minimum, the amount of policy proceeds wrongfully withheld by Texas Farm.").  The court is unpersuaded by Plaintiffs' reliance on *Vail* because it is not an independent injury case and subsequent Texas Supreme Court and Fifth Circuit cases require an independent injury.

*Vail* does not refute the independent injury requirement and instead involves a determination on the amount of damages to award the plaintiffs.  *Vail* does not address what constitutes a sufficient allegation under the DTPA and Texas Insurance Code, as the jury had already determined that defendant violated the DTPA, and the parties therefore assumed that the plaintiffs satisfied the necessary predicates for their claims.

---

[5] Although these cases involve summary judgment determinations, Plaintiffs must set forth sufficient allegations for the court to reasonably infer that they suffered independent injury to proceed further.  Plaintiffs instead argue that independent injury is not required, and the court disagrees.

In any event, subsequent to issuing its decision in *Vail*, the Texas Supreme Court left no doubt that an independent injury was required to recover under the Texas Insurance Code. *See Castaneda*, 988 S.W.2d at 198 (describing the independent injury requirement). Plaintiffs attempt to distinguish *Castaneda* by arguing its analysis is limited to instances where the defendant has not breached the insurance contract but has violated the Texas Insurance Code. Plaintiffs' reading of *Castaneda* is overly restrictive.

*Castaneda* held that there was legally insufficient evidence to support plaintiffs' extra-contractual claims on which they obtained favorable jury findings. *Id.* at 201. The court also concluded that the manner in which defendants handled the claim "did not cause any injury independent of the denial of policy benefits." *Id.* at 199. The jury had awarded damages for loss of the policy benefits and for loss of credit reputation, and the court concluded that these damages could not support plaintiffs' extra-contractual claims because "any loss of credit reputation stemmed from denial of benefits, not from failure of [defendant] to communicate with [Plaintiff] or to properly investigate her claim." *Id.*

Not only do Plaintiffs interpret *Castaneda* too narrowly, they also ignore subsequent cases that apply it more broadly than they suggest it should be. *See, e.g.*, *United Servs. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App   San Antonio 2002, pet. denied) (determining that although the jury found defendants breached the insurance contract and violated the DTPA, plaintiffs "failed to prove any damages apart from those stemming from the denial of the claim" and defendant "cannot, as a matter of law, be liable for the extracontractual claims") (citing *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92 (Tex. App.   San Antonio 2000, no pet.). Ultimately, "Texas law does not, as a general rule, consider a Texas Insurance Code or common-law good faith

and fair dealing claim to be viable unless the insured has suffered damages beyond the damages claimed for, or resulting from, breach of the insurance policy contract." *Tracy v. Chubb Lloyds Ins. Co. of Tex.*, No.12-042, 2012 WL 2411106, at *5 (N.D. Tex. June 28, 2012).

Notwithstanding Plaintiffs' arguments, the court is bound by Fifth Circuit precedent articulating the independent injury requirement. *Parkans*, 299 F.3d at 519. *Parkans* held that the defendant did not act in bad faith and had a reasonable basis for denying plaintiff's claim. *Id*. The court, however, added that the plaintiffs also did not suffer an independent injury. *Id.* ("Moreover, the jury essentially found no tort injuries independent of the contract injuries."). The court, relying on *Castaneda*, concluded that "'[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits.'" *Id.* (citing *Castaneda*, 988 S.W.2d at 198). Thus, there was no basis for recovering on these extra-contractual claims.[6]

Even assuming all of Plaintiffs' allegations are true, they have only alleged and are entitled to recover contractual damages. Plaintiffs have not pled any injury independent of the wrongful denial of benefits, as they removed their allegations of mental anguish from their Fourth Amended Complaint and rest their whole claim on the argument that the law does not require an independent injury. Plaintiffs have not pled sufficient facts to show that they are entitled to relief and therefore fail to state a claim under the Texas Insurance Code. Accordingly, the court will deny Plaintiffs' claims for violations under the Texas Insurance Code.

---

[6] The jury verdict in *Parkans* "contained the same line items of damages for the tort claims . . . as for the breach of contract claims . . . ." The district court, however, disregarded the tort damages when entering judgment. 299 F.3d at 519 n.5. This establishes the need for the independent injury requirement, as plaintiffs will not be entitled to recover tort damages when they are recovering the same contractual damages.

**Memorandum Opinion and Order - Page 11**

B.      DTPA

Defendant argues that Plaintiffs have failed to state a claim for DTPA violations because denial of coverage under the Policy does not constitute a misrepresentation under the DTPA. Plaintiffs allege that Defendant violated the DTPA by representing that their agreement confers rights that it does not confer; by committing an "unconscionable action or course of action;" and by violating the Texas Insurance Code.  *See* Pls.' Fourth Am. Compl.  ¶¶ 48-50 (citing Tex. Bus. Comm. Code §§ 17.46(b)(12), 17.50(a)(3), and 17.50(a)(4)).[7] Plaintiffs further allege that Defendant committed these violations by stating that the Policy allowed it to pay less than 100% of their defense expenses; that Defendant took advantage of Aldous's lack of knowledge, ability, and experience to interpret the Policy; and that Defendant knew its conduct was wrong.

Plaintiffs must allege more than a mere breach of contract to maintain a DTPA claim, because "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (quoting *Ashford Dev. Inc. v. USLife Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex.1983)); *see also Dura-wood Treating Co. v. Century Forest Indus. Inc.,* 675 F.2d 745, 756 (5th Cir. 1982) ("[A] simple breach of contract is not contemplated as a deceptive trade practice under the Texas DTPA.").

To determine whether a claim for a violation under the DTPA is actually a claim for breach of contract, courts consider "both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the

---

[7] In light of the court's ruling that Plaintiffs have failed to state a claim for an Insurance Code § 541  violation, Plaintiffs' only remaining claims under the DTPA are for Defendant's alleged misrepresentations and unconscionable acts.

plaintiff." *Crawford*, 917 S.W.2d at 13.  In *Crawford*, the plaintiff alleged that a sales agent for the yellow pages represented to him that the success of his business was heavily dependent upon yellow page advertising, and that a yellow page advertisement would increase his business by at least seventy to eighty percent in the first year.  917 S.W.2d at 12-14.  The court held that the alleged misrepresentations "were nothing more than representations that the defendants would fulfill their contractual duty to publish, and the breach of that duty sounds only in contract."  *Id.*  Furthermore, the plaintiff's injury was from the breach of contract,  not from the statements themselves, because "[t]he failure to run the advertisement (the breach of the contract) actually caused the lost profits, and that injury is governed by contract law, not the DTPA." *Id.* at 14-15.

Since Plaintiffs have failed to plead DTPA claims that are separate from their breach of contract claim, dismissal is proper at this stage.  When a group of plaintiffs sued the dating website, Match.com, for unconscionable conduct and various misrepresentations, this court *sua sponte* dismissed their DTPA claim under Rule 12(b)(6) because it was "virtually identical to their contract claim that Match.com breached [the contract.]" *Robinson v. Match.com LLC*, No. 10-2651, 2012 WL 5007777, at *6 (N.D. Tex. October 17, 2012).  Although plaintiffs in *Match.com* pled under the DTPA, "in reality they [sought] to recover the benefit of their *perceived* bargain with Match.com." *Id.* (citation omitted) (emphasis in original); *see also  Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 563 (S.D. Tex. 2012) ("Plaintiffs do not allege that [defendant] ever represented that the policies had characteristics or involved rights which they do not have or involve. Rather, Plaintiffs' position in this case is that the policies do have characteristics and involve rights which [defendant] is failing to recognize appropriately.").

**Memorandum Opinion and Order - Page 13**

In affirming this court's holding in *Match.com*, the Fifth Circuit held that "none of the conduct alleged would constitute separate unconscionable conduct under the DTPA." *Malsom v. Match.com, L.L.C.*, 540 F. App'x 412, 416 (5th Cir. 2013). The plaintiffs did not allege that defendant "'never intended' to fulfill the contract," rather they alleged nonperformance of the contract. *Id.* at 415 (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (A party may sustain a DTPA claim when "the other party 'never intended' to fulfill the contract in the first place.")). "Their allegations are essentially, as in *Crawford*, that (1) Match represented that it would perform under the contract, and (2) nonperformance means they misrepresented that they would perform under the contract." *Malsom*, 540 F. App'x at 416. Thus, the district court properly dismissed the claim. *Id.*

Plaintiffs do not dispute the need to allege more than a mere breach of contract; they acknowledge that an "an allegation of mere breach of contract, without more, does not constitute a 'false misleading, or deceptive act,' in violation of the DTPA." Pls.' Resp. 2 (citing *Ashford*, 661 S.W.2d at 935). Instead, Plaintiffs argue that they adequately allege DTPA violations.

Plaintiffs claim sounds only in contract. Essentially, Darwin contends that it can pay less than the full defense expenses, and Plaintiffs contend it must pay the expenses in their entirety and that by arguing otherwise, Defendant violates the DTPA. The alleged duty from which Defendant must act and the nature of the remedy that Plaintiffs seek stem solely from the contract. That is, Defendant's duty to pay the defense expenses arises solely from the contract, and contractual damages would provide Plaintiff with adequate remedy. Similar to both *Crawford* and *Match.com*, when the court considers the actual allegations in the Fourth Amended Complaint, it determines that

Plaintiffs only allege nonperformance of the contract. *See Match.com*, 2012 WL 5007777, *6 ("Accordingly, any duty that Match.com had to Plaintiffs arose solely from the Agreement.").

Plaintiffs are seeking to recover the perceived benefit of the bargain under the Policy. Even if the court accepted Plainitffs' allegations as true, they have failed to state a claim under the DTPA. Accordingly, the court will deny Plaintiffs' claims under the DTPA.

### C.     Breach of good faith and fair dealing

Defendant argues that there is no common law duty of good faith and fair dealing under the facts alleged, as Plaintiffs seek recovery under a third-party policy. In other words, Aldous seeks to recover for fees incurred in defending against Hill's claim. Plaintiffs argue that their ability to pursue this cause of action does not turn on whether the insured holds a first-party or third-party policy, but whether they seek recovery from a first-party *claim* or a third-party *claim*. Even so, under these facts, Defendant's contention that it does not owe a common law duty remains correct.

This duty exists only with regards to first-party claims. "A first-party claim is one in which an insured seeks recovery for the insured's own loss," while a third-party claim "seeks coverage for injuries to a third party." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 n. 2 (Tex. 1997) (citation omitted). Defendant's liability turns on whether Plaintiffs' claims constitute first-party claims    to which a common law duty of good faith and fair dealing arises    or third-party claims    to which no duty arises. Aldous's claim falls in the latter category.

"An insured . . . has no claim for bad faith premised on the insurer's investigation or defense of a claim brought against it by a third party." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh*, 341 F.3d 415, 425 (5th Cir. 2003);[8] *see also Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 507 (N.D. Tex. 2011) ("[W]hen handling a third-party claim, an insurer owes the insured no duty of good faith and fair dealing.").  When an insurer is tasked with handling an insured's defense, "an insurer's common law duty. . . is limited to the *Stowers* duty to protect the insured by accepting a reasonable settlement offer within policy limits."  *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007); *see also HVAW v. Am. Motorists Ins. Co.*, 968 F. Supp. 1178, 1184 (N.D. Tex. 1997) ("[T]he Texas Supreme Court has recently held that an insurer owes no duty of good faith and fair dealing to investigate and defend claims against its insured.") (citation omitted)).  Texas does not extend the duty to the insurer's investigation or defense of a claim because "'an insured is fully protected against [her] insurer's refusal to defend or mishandling of a third-party claim by his contractual and *Stowers* rights,' which give rise to causes of action sounding in contract and negligence." *Med. Care Am.*, 341 F.3d at 425 (citations omitted).[9]

Aldous seeks to recover attorney's fees incurred from defending herself in the legal malpractice action brought by Hill, a third party.  Plaintiffs specifically allege that Darwin owed Plaintiffs a duty of good faith and fair dealing to "(1) perform its duties and obligations under the

---

[8] In *Medical Care*, shareholders sued a Texas corporation, Medical Care.  341 F.3d 415 at 417-19. The shareholder suit settled. *Id.* Medical Care and its directors were each required to contribute to the settlement as separate defendants. *Id.* The directors, however, were also entitled to indemnification from Medical Care.  *Id.* Medical Care's indemnification of the directors was a first-party claim and did not involve the defense or investigation of a third-party claim, and it formed the basis of the lawsuit to which the duty of good faith attached.  *Id.* at 425.  The parties, however, agreed that the insurer had no duty to defend in the shareholder suit, which would constitute a third-party claim.

[9] The *Stowers* duty protects the insured by requiring an insurer to accept a reasonable settlement offer within the policy limits. *Mid Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007).  "The *Stowers* duty is not activated by a settlement demand unless three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Id.* (citation omitted).  Neither of the parties raised the *Stowers* duty as an issue, and the court finds that it is not applicable to the facts of this case.

Policy in a reasonable and timely manner, and (2) properly handle the Claim." Pls.' Fourth Am.

Compl. ¶ 53. Plaintiffs' claim, however, specifically relates to the cost to defend the lawsuit

between Aldous and Hill and therefore renders the duty of good faith and fair dealing inapplicable.

Plaintiffs contend that Defendant owes a common law duty and cite for support *Lamar*

*Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 17-19 (Tex. 2007). *Lamar* defined first-party

claims, as the term is used under the Texas Prompt Payment Act. *Id. Lamar* is inapplicable because

it interprets the Texas Prompt Payment statute and does not involve the common law duty of good

faith and fair dealing. 242 S.W.3d at 19-20 ("The final certified question then is a matter of statutory

construction, which is a question of law."). In construing the statute, the court held that the

"prompt-payment statute applied to an insured's claim for a defense under a liability policy. . . .

because it concerns a direct loss to the insured; that is, the claim does not belong to a third-party"

and that "the insured is the only party who will suffer the loss or benefit from the claim." *Id.* at 17.

The court arrived at this conclusion, however, only by interpreting the statute. *Id.* ("We think that

this reasoning is correct because it more accurately reflects the Legislature's purpose for enacting

the prompt-payment statute.").

Although Plaintiffs attempt to expand the applicability of *Lamar*'s holding beyond the Texas

Prompt Payment Act, cases determining the scope of the duty of good faith and fair dealing do not

define first-party claims so broadly. *See One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, No. 11-

3061, 2012 WL 2403500, at *6 (S.D. Tex. June 25, 2012) ("As this court reads *Lamar Homes*, the

Texas Supreme Court was construing what the Texas Legislature meant for the statute to cover, not

re-writing all of its prior caselaw relating to insurers' common law duties."); *Eland Energy, Inc.*, 795

F. Supp. 2d at 509 ("Texas law does not provide a cause of action for breach of the duty of good

faith and fair dealing in the context of an insurer's handling of a third-party claim. The court therefore holds that [Plaintiff's] only common law remedy in the context of a third-party claim is under *Stowers*). Thus, even in light of *Lamar*, "Texas courts hold that an insured has no common law duty based on a failure to defend or 'mishandling of the defense of a third-party claim.'" *One Beacon Ins. Co.*, 2012 WL 2403500, at *6. *Lamar* concerns statutory liability and is therefore not applicable to determining the scope of the duty of good faith and fair dealing.   Thus, Plaintiffs' reliance on *Lamar* is misplaced.[10]

Furthermore, the Fifth Circuit recently made an "*Erie* guess" on how the Texas Supreme Court would rule on this issue and confirmed that there is no common law duty for third-party claims.  *See Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 520 (5th Cir. 2013).  The issue in *Eland* was "whether an insurer breaches a duty to its insured in Texas by surreptitiously attempting to settle a covered third-party claim and truncating its duty to defend, despite paying the full limits of its coverage." *Id.* at 516. The court succinctly stated, "There exists no statutory cause of action for breach of the duty of good faith and fair dealing in the context of an insurer's handling of a third-party claim.'" *Id.* at 521

Plaintiffs' claim, once again, sounds only in contract.  The court finds that Plaintiffs have adequate remedy under contract law or the *Stowers* doctrine, to the extent it is applicable.  Even assuming that Plaintiffs' allegations are true, they have failed to state a claim upon which relief can be granted, as Texas does not recognize the duty of good faith and fair dealing in this context.

---

[10] Plaintiffs devote a lengthy discussion to *Lamar* in their Response, but they never relate it to the duty of good faith and fair dealing.  They simply end their argument by saying "[a]nd, of course, the Texas Supreme Court used the same 'claim' rather than 'policy' language in its common law bad faith decisions."  Pls.' Resp. ¶  20. They, however, cite no authority to support this argument and do not explain how it negates Defendant's argument that it has no duty. .

### D.      Amendment of Pleadings

In response to Defendant's motion to dismiss, Plaintiffs did not request to amend their pleadings in the event the court determined that they failed to state a claim.  The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted).  In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

The court believes that Plaintiffs have stated their "best case" and that they cannot improve upon or supplement the allegations as pleaded.  Plaintiffs essentially have had "five bites at the apple," as they filed their original pleading and subsequently amended it four times. "[A]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller*, 342 F.3d at 567.  The court therefore concludes that Plaintiffs cannot set forth sufficient allegations that exist to state a claim upon which relief can be granted and that further attempts to amend would be futile.  As a further ground for disallowing amendment of the pleadings, the court determines that such further attempts would unnecessarily delay the resolution of this action.  Accordingly, the court will not allow further amendment of Plaintiffs' pleadings.

**Memorandum Opinion and Order - Page 19**

IV.    **Conclusion**

For the reasons stated herein, the court **denies** Defendant's Motion to Dismiss with respect to Plaintiffs' claims for violations of the Texas Insurance Code § 542.  The court **grants** Defendant's Motion to Dismiss with respect to Plaintiffs' claims for violations under the Texas Insurance Code § 541, violations of the DTPA,  and breach of the duty of good faith and fair dealing; and **dismisses with prejudice** these claims.  Plaintiffs' remaining claims against Defendant are for breach of the insurance contract, violations under Texas Insurance Code § 542, and a declaratory judgment.

**It is so ordered** this 12th day of November, 2014.

Sam A. Lindsay
United States District Judge