## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLA G. ALDOUS, P.C.,** and | § | |
| **CHARLA ALDOUS,** | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV -3310-L** |
| | § | |
| **DARWIN NATIONAL** | § | |
| **ASSURANCE COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiffs' Motion for Partial Summary Judgment Against Darwin National Assurance Company (Doc. 54), filed August 29, 2014; and Defendant Darwin National Assurance Company's Cross-Motion for Summary Judgment (Doc. 79), filed October 30, 2014. After careful consideration of the motions, briefs, replies, record, appendixes, and applicable law, the court **grants in part** and **denies in part** Plaintiffs' Motion for Partial Summary Judgment Against Darwin National Assurance Company, and **grants in part** and **denies in part** Defendant Darwin National Assurance Company's Cross-Motion for Summary Judgment.

## I.      Procedural and Factual Background

### A.      Procedural Background

This case arises from a dispute over Defendant's alleged obligation to pay attorney's fees incurred by Plaintiffs Charla Aldous ("Aldous") and Charla G. Aldous PC ("Aldous PC") (collectively, "Plaintiffs").   The case was originally brought in County Court at Law No. 1 of Dallas County, Texas, on November 14, 2012, against Darwin and Defendant Teresa Lugo ("Lugo").   On

August 21, 2013, the action was removed to federal court because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.[1]

In light of the court's recent ruling partially granting Defendant's Motion to Dismiss, Plaintiffs' remaining claims are for breach of the insurance contract, violations of the Texas Insurance Code § 542, and a request for declaratory relief. Defendant also asserts counterclaims against Plaintiffs for breach of contract, unjust enrichment, money had and received, and misrepresentations. It also seeks a declaratory judgment, attorney's fees, and the imposition of a constructive trust.

On August 29, 2014, Plaintiffs filed their Motion for Partial Summary Judgment, urging the court to grant summary judgment as to their affirmative claims and dismiss Defendant's counterclaims. On October 30, 2014, Defendant responded and filed its Cross-Motion for Summary Judgment, urging the court to grant summary judgment as to its counterclaims and dismiss Plaintiffs' claims.

### B.    Factual Background

Aldous is an attorney who decided to purchase professional liability insurance for herself and her law firm. On March 1, 2010, Darwin agreed to provide Plaintiffs with professional liability coverage and entered a contract for liability insurance (the "Policy").

Aldous was in a dispute with her former client, Albert G. Hill III and his family ("Hill"). Aldous, along with Lisa Blue, of Baron and Blue, and Steve Malouf, of The Law Offices of Stephen Malouf (collectively, "BAM"), provided legal representation for Hill. On February 15, 2011, BAM

---

[1] On November 17, 2014, Lugo was dismissed as a defendant, pursuant to an Agreed Motion to Dismiss with Prejudice (Doc. 88), leaving Darwin as the only defendant in this action.

sued to recover attorney's fees, and Hill, in turn, sued them for breach of fiduciary duty, duress, breach of contract, fraud, and professional negligence (the "Hill lawsuit").  Pls.'App. 32-40, Ex. 3.

Aldous requested that Darwin hire Alan Loewinsohn ("Loewinsohn"), of Loewinsohn Flegle Deary LLC ("LFD"), to defend against Hill's counterclaims, because Loewinsohn represented BAM on their affirmative claims and was familiar with the complexities of the case.   Darwin denied Aldous's request.  On March 9, 2011, after exchanging multiple e-mails and phone conversations, Darwin agreed to retain Plaintiffs' counsel, LFD, to defend against Hill's claims.  Darwin only agreed to the retention of Plaintiffs' counsel subject to conditions in its reservation of rights letter ("RoR").  The RoR stated that Defendant is "responsible for one-third (1/3) of Mr. Loewinsohn's reasonable and customary fees and expenses related to the defense of this counter claim and that we will not be covering any work done on behalf of the firms related to their affirmative claims in pursuing their attorney fees."  Pl.'s App. 64, Ex. 5.

 Plaintiffs contend that they are entitled to summary judgment because Darwin breached the Policy by not paying all of the defense expenses, and they additionally seek a declaratory judgment that "they are entitled to recover from Darwin at least all of the attorneys' fees and expenses incurred on their behalf by defense counsel." Pls.' Mot. Summ. J. 8.  Defendant argues that it is required to pay only one-third of the attorney's fees incurred to defend against Hill's claims; that the amount it owes should not include attorney's fees for Plaintiffs' affirmative claims; and that Darwin has paid an amount greater than what it owes.  Def.'s Mot. Summ. J. 4.

Aldous eventually won her lawsuit against Hill and obtained a judgment. Plaintiffs additionally allege that Darwin wrongly represented that, once Aldous recovered judgment, Darwin was entitled to reimbursement for attorney's fees it had already paid. Pl.'s Fourth Am. Compl. ¶ 21. As part of its counterclaim, Defendant argues it is entitled to a portion of the judgment but that Plaintiffs refuse to pay. Def.'s Mot. Summ. J. 4.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative

defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III.   **Analysis**

A.   **Plaintiffs' Breach of Contract Claim**

Plaintiffs and Defendant request summary judgment on Plaintiffs' breach of contract claim.

Defendant's obligations to Plaintiffs are set forth in the Policy, which provides as follows:

> The Insurer will pay on behalf of an Insured, subject to the Limits of Liability shown in the Declarations, all amounts in excess of the Retention shown in the Declarations, that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim arising out of a Wrongful Act . . . .
>
> The Insurer shall have the right and duty to defend any Claim seeking Damages that are covered by this Policy made against an Insured even if any of the allegations of the Claim are groundless, false or fraudulent. The Insurer shall have the right to select defense counsel for the investigation, defense or settlement of the Claim and the Insurer shall pay all reasonable Claim Expenses arising from the Claim.

Pls.' App.15, 22, Ex. 2.

The Policy further defines "claim expenses": as "reasonable fees, costs and expenses charged by attorneys retained or approved by the Insurer for a Claim brought against an Insured." *Id.* at 16-17.

Although the court traditionally addresses each parties' motion for summary judgment separately, because the parties seek summary judgment on the same claims and given the manner in which the parties briefed the claims, the court first addresses all dispositive motions regarding Plaintiffs' breach of contract claim, and then addresses all dispositive motions regarding Defendant's affirmative claims.  For the reasons herein stated, the court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment with respect to this breach of contract claim.

1.      **Whether Darwin Has a Duty to Pay for Plaintiffs' Affirmative Claims**

Plaintiffs assert that they are entitled to summary judgment on their breach of contract claim

for two reasons.  First, Plaintiffs argue that Darwin has a duty to pay for attorney's fees incurred in

pursuit of Aldous's affirmative claims against Hill and, likewise, seek a declaratory judgment from

the court stating that Aldous's affirmative claims were inextricably intertwined with the defense

against Hill's counterclaims.  Separate from asserting an obligation to pay for Aldous's affirmative

claims, Plaintiffs also contend that Defendant breached its duty under the Policy by making improper

deductions and wrongly allocating a 50/50 split between defensive claims and affirmative claims.

 The court addresses each of these contentions in turn.

a.      **Darwin's Duty to Defend**

Plaintiffs contend that because Darwin had a duty to defend, it also had a duty to pay for legal

services related to their affirmative claims "if the discrete legal services that supported Plaintiffs'

affirmative claim also were required to defend even one of the counterclaims."  Pls.' Mot. Summ.

J. 13.  Plaintiffs argue that "'[i]f a complaint potentially includes a covered claim, the insurer must

defend the entire suit.'" Pls.' Mot. Summ. J. 13 (quoting *Zurich American Ins. Co. v. Nokia, Inc.*,

268 S.W.3d 487, 491 (Tex. 2008)).  The Fifth Circuit articulates this rule as follows: "When an

insurer has a duty to defend, even where 'a claim falls partially within and partially outside of a

coverage period, the insurer's duty is to provide its insured with a *complete defense*.'" *Primrose

Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 559 (5th Cir. 2004) (citation omitted)

(emphasis added).

The court is not impressed with Plaintiffs' citations, as none of the above-cited cases supports

their arguments.  Plaintiffs contend that these cases also create a duty to prosecute affirmative claims.

Neither *Zurich* nor *Primrose* mentions anything other than an insurer's duty to provide a complete defense. That Defendant had a duty to defend does not give rise to an obligation to pay for Plaintiffs' affirmative claims. *Zurich* and *Primrose* do not stand for the proposition that a duty to defend one covered claim also gives rise to an obligation to pay for an insured's affirmative claims.[2] Accordingly, Plaintiffs are not entitled to payment for fees associated with their affirmative claims.

### b.   Declaratory Judgment

Plaintiffs similarly argue that Defendant must pay for all of the expenses incurred "whether related to Plaintiffs' defensive or affirmative claims," because the attorney's fees relating to the claims are inextricably intertwined and incapable of separation. Pls.' Mot. Summ. J. 17. They seek a declaratory judgment that:

> Plaintiffs are entitled to recover from Darwin all the attorney's fees and expenses incurred on their behalf by their law firm from the date they notified Darwin of the Claim forward   whether related to Plaintiffs' defensive or affirmative claims.

> Plaintiffs' affirmative and defensive claims in the Lawsuit, other than the negligence claim were inextricably intertwined, with the success or failure of each depending on the outcome of the other.

> Plaintiffs are entitled to a declaration that the fees and costs incurred in prosecuting their affirmative claims against the claimant from the date they notified Darwin of the Claim forward are encompassed with Darwin's duty to defend.

Pls. Mot. Summ. J. 17.[3]

---

[2] Plaintiffs elaborate on this argument when requesting declaratory relief and argue that their claims are inextricably intertwined. The court addresses this argument in greater detail in Section V(A)(2) of this opinion.

[3] Plaintiffs notified Defendant of the claim on February 17, 2011. Pls.' App. 31. Aldous's letter to Darwin is dated February 17, 2011; however, in its RoR, Defendant states it received Aldous's letter on February 18, 2011. Pls.' App. 64 ("[A]ny charges incurred to date by defense counsel, prior to our receipt of the notice of this claim (February 18, 2011), will not be covered. . . ."). This discrepancy does not have any effect on the court's adjudication of the parties' claims.

**Memorandum Opinion and Order– Page 8**

The test for whether claims are inextricably intertwined is whether "discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *see also In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) ("Yet interrelated or intertwined facts are not enough to trigger the exception; 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.'") (citation omitted).

There are significant differences between this action and *Chapa*, which is relied on by Plaintiffs. *Chapa* involved an award of attorney's fees to the plaintiff for prevailing on her affirmative claims. *Chapa*, 212 S.W.3d at 310. *Chapa* ordered the plaintiff's attorney to segregate fees between the claims on which she prevailed and the claims on which she lost. Here, Plaintiffs' argument is qualitatively different from the arguments presented in *Chapa* and cases like it, as these cases do not even address, and therefore cannot support, the proposition that a duty to defend also requires an insurer to pay for intertwined affirmative claims brought by the insured. *See also* Def.'s Mot. Summ. J. 27 (arguing that these cases apply "to a party's claim for attorney's fees as damages pursuant to a statute, not to an insurance obligation to pay defense costs under an insurance policy that specifically defines the scope of covered fees").

Even assuming that *Chapa* applies, as Plaintiffs contend, it does not advance their argument. Plaintiffs argue that they "could not have prevailed on their affirmative claim without also defeating Hill III's counterclaim." Pls.' Mot. Summ. J. 21. Even so, this does not give rise to a duty to pay for Plaintiffs' affirmative claims. Stated differently, the converse of Plaintiffs' statement is not true; that is, to prevail against Hill's counterclaims   to which Darwin has admitted its obligation to

defend   BAM did not need to prevail on their affirmative breach of contract claim.[4]   *See* Def.'s

Reply 7 ("Aldous has also failed to demonstrate legally or factually how prosecution of the

affirmative claims was necessary to the defense of the Fee Counterclaim.").   Ultimately, the discrete

legal duty to defend was capable of segregation.

   *Chapa* refused to hold that the attorney's fees were inextricably intertwined, finding that

making such an argument "required [defendant's] attorneys to take a position inconsistent with

[defendant's] underlying claims." 212 S.W.3d at 313.   In *Chapa*, the defendant's attorneys

previously argued that its breach of contract and DTPA claims were separate, and the court found

that "[h]aving prevailed in her argument that the claims are distinct, it is hard to see how she can also

claim they are inextricably intertwined."   *Id.*

   Plaintiffs assert that "[b]ecause the Counterclaim, affirmative defenses, and affirmative

claims were all inextricably intertwined, success or failure of the affirmative and defensive claims

depended on the outcome of the other." Pls.' Reply 16-17.   Judge Reed O'Connor ("Judge

O'Connor") found that Plaintiffs' affirmative claims were inextricably intertwined with all of Hill's

counterclaims, except for Hill's professional negligence claim.   Memorandum Opinion and Order

29 (Doc. 379), *Blue v. Hill*, No. 10-2269 (N.D. Tex. Dec. 31, 2011).   To prevail on their breach of

contract claim, BAM needed to defeat Hill's counterclaims for breach of fiduciary duty, duress,

breach of contract, and fraud.   None of Hill's counterclaims, however, requires that Plaintiffs prevail

on their breach of contract claim.   Had Darwin hired a different attorney, as it originally planned, a

successful defense would not depend on the success of the affirmative claims, and Plaintiffs would

have paid that attorney independent of any work done by Loewinsohn on the affirmative claims.   The

---

[4] Plaintiffs contend that the converse is true and argue that they "had to prosecute the affirmative claim successfully in order to defeat the intertwined Counterclaim." Pls.' Reply 3.

**Memorandum Opinion and Order- Page 10**

discrete legal services necessary for the defense would have been entirely separate from the pursuit of BAM's affirmative claims.  While both BAM and Hill asserted claims for breach of contract in the Hill lawsuit, the claims were independent of each other; that is, failure of one party's breach of contract claim did not require that the other party's breach of contract claim prevail.  That Darwin capitulated to Plaintiffs' request and hired Loewinsohn as its attorney to defend against Hill's counterclaims does not create any obligations under the Policy.  Plaintiffs fail to show why Defendant must pay for the prosecution of their affirmative claims, and they are not entitled to a declaration that "Plaintiffs' affirmative and defensive claims in the Lawsuit other than the negligence claim were inextricably intertwined, with the success or failure of each depending on the outcome of the other." Pls. Mot. Summ. J. 17.

Plaintiffs attempt to have it both ways.  When arguing against Darwin's 50/50 split between affirmative and defensive claims, they state, "Loewinsohn had already identified affirmative fee costs of $56,370 and $90,033.03 for March and April 2011."  Pls.' Reply 10.  Plaintiffs assertions do not align with the evidence in the record.  Loewinsohn was able to segregate affirmative fees for March and April, and therefore the court cannot grant Plaintiffs' request for a declaration that "Plaintiffs are entitled to recover from Darwin *all the attorney's fees and expenses incurred* on their behalf by their law firm from the date they notified Darwin of the Claim forward   whether related to Plaintiffs' defensive claims or affirmative claims." Pls.' Mot. Summ. J.  17 (emphasis added).  On this basis alone, Plaintiffs would not be entitled to 100% of the attorney's fees accrued, as Loewinsohn already established that a portion of the work done is divisible.

Plaintiffs have failed to establish that Darwin has any duty to pay for their affirmative claims.  The Policy requires Defendant to pay for reasonable claim expenses arising from defense

of a claim against its insured. The Policy imparts no duty on Darwin to pay for its insured's affirmative claims, and the court will not rewrite the Policy to find such a duty. Accordingly, the court will deny Plaintiffs' request for a declaratory judgment.

### 2.   Darwin's Duty to Defend and Disputed Reductions

Because the court declines to rewrite the Policy to hold that Darwin is liable for the attorney's fees incurred in pursuit of Aldous's affirmative claims, Plaintiffs' only remaining argument for summary judgment is that Darwin made improper deductions regarding the defense expenses. Defendant acknowledges its duty to defend Aldous against Hill's counterclaims. Def.'s Mot. Summ. J. 15. Defendant, however, disputes the amount it must pay to discharge its duty.

Plaintiffs contend that Defendant breached the contract when it refused to pay expenses that it was obligated to pay. Plaintiffs maintain that Stephanie Lizotte ("Lizotte"), the claims examiner, made certain unwarranted deductions. Lizotte (1) deducted Secretarial and IT overtime; (2) split the bill in half to apportion between the affirmative and defensive claims; and (3) divided the remaining portion of the bill by three to account for the three attorneys on the case. On March 21, 2011, Aldous sent an invoice in the amount of $108,702.01. On May 13, 2011, Lizotte sent Aldous an e-mail explaining the deductions made by Darwin. After making the above-described deductions, Darwin determined it was obligated to pay $12,583.48 of the invoice originally submitted by Aldous. Pls.' App. 70-71, Ex. 7. On April 1, 2011, Aldous submitted an invoice for $548,826.49, and Darwin determined it was obligated to pay $80,103.67. *Id.* On May 1, 2011, Aldous submitted a bill for $746,869.09, and Darwin determined that it was obligated to pay $106,225.24. *Id.*

Defendant contends that Plaintiffs' argument regarding its deductions of the defense expenses "should be ignored," because it has already paid more than what its duty to defend required. Def.'s

Mot. Summ. J. 15.  Defendant expounds this argument in its reply and asserts that Plaintiffs  failed

to cite any summary judgment evidence indicating Darwin actually made these deductions described

by Lizotte.  According to Defendant, Plaintiffs' only summary judgment evidence is a string of e-

mails between Lizotte and Aldous, which only constitutes Lizotte's "preliminary calculations," and

does not show what Darwin actually paid for the defense.

On the other hand, Defendant argues that it has provided competent and unequivocal

summary judgment evidence regarding the exact amount it paid for Aldous's defense    $502,364.59.

Def.'s App. 126, Lizotte Decl., Ex. 2 ("To date, Darwin has paid a total of $502,364.59 in fees and

expenses of Mr. Loewinsohn's firm on behalf of Aldous.").[5]  Darwin asserts that, based on

determinations made in the underlying *Hill* lawsuit, the defense expenses have already been

calculated at $668,068.38,  and therefore, Darwin has already paid more than one third of the defense

expenses.

Notwithstanding Plaintiffs' and Defendant's arguments concerning the disputed reductions,

Defendant contends that Plaintiffs are judicially and collaterally estopped from disputing the cost

of the defense.  For the reasons explained hereafter, judicial estoppel is applicable to this case and

bars Plaintiffs' arguments that the cost of defense is an amount other than $668,068.31.  *See Love*

---

[5]  Plaintiffs do not present any competent summary judgment evidence disputing Darwin's assertion that it has paid
$502,364.59.  Instead, Plaintiffs assert that Defendant owes an amount greater than what Defendant asserts it has already
paid.  Plaintiffs state:

> The cost of Ms. Aldous' time, Mr. Walker's time, and the fees and expenses paid to LFD for pursuing
> the affirmative claim (prior to the assertion of Hill III's Counterclaims) totals at least $737,800, which
> exceeds the amount of $502,364.59 that Darwin alleges it has spent defending the Counterclaims by
> more than $235,000.

Pls.' Resp. 16 (citing Pls.' App. 6).  Accordingly, the court accepts Defendant's summary judgment evidence that
Defendant has paid  $502,364.59, and determines that the only fact still in dispute is the total cost of the defense.  *See*
Def.'s App. 126, Lizotte Decl., Ex. 2.

**Memorandum Opinion and Order- Page 13**

*v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) ("The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding" and "numerous considerations 'may inform the doctrine's application in specific factual contexts.'").  Having concluded that judicial estoppel applies, the court need not address Defendant's arguments concerning collateral estoppel.  Additionally, even if judicial estoppel did not apply,  Defendant did not breach the Policy.  Accordingly, the court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim.

### a.      Judicial Estoppel

Defendant argues that Plaintiffs are judicially estopped from disputing the defense expenses. Defendant derives the total cost to defend from an affidavit submitted by Loewinsohn and argues that this conclusively establishes the cost of the defense.  BAM won their lawsuit for breach of contract against Hill, and the court also awarded BAM the attorney's fees incurred in the Hill lawsuit for prevailing on this breach of contract claim.  Order at 16 (Doc. 357), *Blue v. Hill*, No. 10-2269 (N.D. Tex. August 11, 2011),  Def.'s App. 80, Ex. 1-D ("The Court finds that BAM is the prevailing party and is, thus, entitled to an award of reasonable attorney fees and costs."). As part of the Hill lawsuit, BAM and Hill agreed that the "right to recover and the amount of, if any, attorneys' fees and expenses owed by the Hills to BAM (the 'Fee Dispute') shall be determined by an evidentiary hearing before [United States Magistrate] Judge [Renee Harris] Toliver . . . ."  Def. Mot. Summ. J. 9 (citing Agreement at 1, *Blue v. Hill*, No. 10-2269 (N.D. Tex. January 17, 2011), Def.'s App.  13, Ex. 1-B).

In the declration Loewinsohn submitted pursuant to BAM and Hill's Agreement, Loewinsohn segregated and apportioned fees for work done on the affirmative and defensive claims. His Second Supplemental Declaration states that "$668,068.31 was a reasonable and necessary fee for the defense of the counterclaims brought by Hill III" and, from that figure, further breaks out the cost to defend against the professional negligence counterclaim. Def.'s App. 87, Ex. 1-E. In other words, Loewinsohn was able to apportion between the affirmative claims and found that the reasonable and necessary fee for prosecution of claims was $2,054,178.18, and the reasonable fee for the defense was $668,068.31. Darwin has paid a total of $502,364.59. Accordingly, Defendant seeks summary judgment because it has paid more than its one-third share of $668,068.31.

Judicial estoppel "is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (internal quotation marks and citation omitted). "The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Love*, 677 F.3d at 261(internal citations and quotation marks omitted). "The aim of the doctrine is to protect the integrity of the judicial process." *Id*. (internal quotation marks and citations omitted). In other words, "the purpose of the doctrine is to prevent litigants from playing fast and loose with the courts . . . ." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

Importantly, "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). For the doctrine to apply, at least "two bases for judicial estoppel

must be satisfied before a party can be estopped." *Hall*, 327 F.3d at 396 (internal citation and quotation marks omitted).  "First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position." *Id*. (citation and quotation marks omitted).  The Supreme Court also identified a third factor that many courts also consider:  whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51; *see also Hall*, 327 F.3d at 399 ("In addition to the two factors primarily relied on in this Circuit and already discussed, the Supreme Court articulated a third, 'whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'") (internal citation omitted).  An application of these factors leads the court to conclude that Plaintiffs are judicially estopped from arguing that the cost of the defense is for an amount other than $668,068.31.

### i. *Inconsistent Positions*

Judicial estoppel is appropriate because  Aldous is taking a position clearly inconsistent with her previous position in the Hill lawsuit.  During the Hill lawsuit, the parties agreed that, "[t]he right to recover and the amount of, if any, attorneys' fees and expenses owed by the Hills to BAM (the 'Fee Dispute') shall be determined by an evidentiary hearing before [United States Magistrate] Judge [Renee Harris] Toliver no sooner than April 11, 2011." *Blue v. Hill*, No. 10-2269 (N.D. Tex. January 17, 2011), Def.'s App.  13, Agreement 1, Ex. 1-B.  Equally as significant, the parties further agreed that United States Magistrate Judge Renee Harris Toliver's ("Judge Toliver") "ruling on the Fee Dispute can be appealed only to Judge O'Connor," and they waived "all other right to appeal on any grounds . . . ." *Id.* at 3.  Accordingly, Loewinsohn, Aldous's attorney, submitted an affidavit

to the court, asserting that the cost of defense was $668,068.31.   Def.'s App. 87, Ex. 1-E. "Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel."  *Hall*, 327 F.3d at 396.

Plaintiffs are attempting to take a position inconsistent with Aldous's position in the Hill lawsuit and, now, argue that Defendant is not entitled to summary judgment because Plaintiffs contend that Loewinsohn's affidavit does not capture the full cost of the defense.  Plaintiffs argue that the original declaration submitted by Loewinsohn did not segregate the attorney's fees associated with the affirmative claims and defensive claims.  Loewinsohn's affidavit states that "LFD's fees and expenses can all be allocated either to the prosecution of BAM's breach of contract claim or to the defense of the counterclaims and affirmative defenses. . . [and] [t]herefore, no segregation of fees and expenses is necessary."  Pls.' Supp. App. 6, Loewinsohn Decl. 6.  The court is unpersuaded by this argument, as Loewinsohn segregates  the fees associated with the affirmative and defensive claims in his supplemental and second supplemental declaration.  Def.'s App. 87, Ex. 1-E.

Plaintiffs additionally argue that Loewinsohn limited the defensive costs to a specific time period of May 1, 2011- June 24, 2011, which related to "post hearing defense expenses." Pls.' Reply 15.  The purpose of judicial estoppel, however, prevents Plaintiffs from taking positions such as this one.  Plaintiffs agreed to be bound by the determination of the magistrate judge and Judge O'Connor, and the agreement between BAM and Hill does not refer to the dispute over attorney's fees in limiting terms.  Rather, the agreement addressed the dispute over attorney's fees unequivocally and stated explicitly that, "The right to recover and the amount of, *if any*, attorneys' fees and expenses owed by the Hills to BAM . . . ."  *Blue v. Hill*, No. 10-2269 (N.D. Tex. January 17, 2011), Def.'s App.  13, Agreement 1, Ex. 1-B (emphasis added).  Inclusion of the language "if any" evinces an

intent to consider the determination by the magistrate judge as a full, complete, and conclusive calculation of the attorney's fees owed to BAM, subject only to a final determination by Judge O'Connor, if an appeal was taken.

The Agreement does not indicate, or even intimate, that Loewinsohn's affidavit intended to limit the figure to a period of time or to an amount other than the full cost for defending BAM in the *Hill* lawsuit. Hill filed his counterclaims on February 15, 2011, and Aldous provided notice of this counterclaim to Darwin on March 9, 2011. Counter-Complaint of Albert G. Hill III, No. 10-2269 (N.D. Tex. February 15, 2011), Pls.' App. 32-41, 52; *see also* Pls.'App. 27 ("The Insured, as a condition precedent to this Policy, shall, as soon as practicable and no later than sixty (60) days after the termination of the Policy Period, provide Notice to the Insurer of any Claim made against an Insured during the Policy Period."). Thus, Loewinsohn's estimation that his work for defense occurred between May 1, 2011- June 24,2011, is not unreasonable, despite Plaintiffs attempt to make it appear so. Moreover, Judge Toliver flatly stated:

> In a pretrial stipulation, the parties agreed that BAM could submit, by affidavit, evidence in support of an award of attorneys' fees and expenses in the event of a recovery by BAM. (Doc. 240). Accordingly, BAM's counsel, *Alan Loewinsohn, has provided a declaration in support of his request for attorneys' fees and costs and incurred in litigating BAM's claims.*

Def.'s App. 80, Ex. 1-D. Thus, the record establishes that Loewinsohn's affidavit represented the full cost of the defense, and Plaintiffs do not provide competent summary judgment evidence indicating otherwise. Plaintiffs cannot now turn around and assert that the defense expenses are for an amount different from the attorney's fees determined pursuant to BAM's and Hill's stipulation. *See*, *Blue v. Hill*, No. 10-2269 (N.D. Tex. January 17, 2011), Def.'s App. 13, Agreement 1, Ex. 1-B.

The judgment issued in the *Hill* lawsuit further confirms that Aldous is attempting to take a position inconsistent with the fee determinations in the Hill lawsuit; however, the manner in which the court reaches this conclusion requires further parsing.  The judgment resolves the attorney's fees dispute arising from the *Hill* lawsuit.  The judgment awards BAM "the reasonable costs and fees in defending against Hill III's counterclaims in the amount of $2,586,560.11," which accounts for Judge O'Connor's finding that the affirmative and defensive claims were inextricably intertwined. *Blue v. Hill*, No. 10-2269 (N.D. Tex. Jan. 10, 2012), Def.'s App. 97,  Judgment 3,  Ex. 1-F; see also Def.'s Reply 10 n.7.   The judgment accounts for the $2,054,178.18, incurred in pursuit of BAM's affirmative claims, and $532,381.93 for the cost to defend.  The court, in awarding attorney's fees, held Hill liable for only  $532,381.93 of the defense expenses because it held that defending against Hill's counterclaim for professional negligence was not inextricably intertwined with BAM's affirmative claims.  Memorandum Opinion and Order 29 (Doc. 379), *Blue v. Hill*, No. 10-2269 (N.D. Tex. Dec. 31, 2011).   Based on Loewinsohn's declaration, Judge O'Connor started from the assumption that the total cost to defend against Hill's counterclaims was $668,068.38, and then, subtracted the amount of fees that Loewinsohn attributed to Hill's professional negligence counterclaim.   *See Blue v. Hill*, No. 10-2269 (N.D. Tex. Jan. 10, 2012), Def.'s App. 97, Judgment 3, Ex. 1-F.  Thus, the judgment confirms that Judge O'Connor accepted Loewinsohn's declaration as a full and accurate representation of the defense expense for defending BAM in the Hill lawsuit and used his affidavit in issuing final judgment.

The judgment gives further support to the court's conclusion that, although Judge O'Connor's determination of the defense expenses estops the parties from disputing the cost associated with the defense, his holding that a portion of the attorney's fees was inextricably

intertwined applied under circumstances different from those before the court today. Judge O'Connor held that Hill was not liable for attorney's fees incurred in defending against his professional negligence counterclaim because that counterclaim was not inextricably intertwined with BAM's affirmative claims. Accordingly, Judge O'Connor included only $532,381.93 of the $668,068.38. *See* Memorandum Opinion and Order (Doc. 379), *Blue v. Hill*, No. 10-cv-2269, 29 (N.D. Tex. Dec. 31. 2011) ("The Court further finds, however, that the facts giving rise to Hill III's counterclaim for professional negligence are different from the facts relating to the parties' dispute regarding the fee agreement."). This supports the court's conclusion that this case involves an issue different from Judge O'Connor's inextricably intertwined holding, as neither party contends that Darwin is not liable for the cost to defend the professional negligence claim. Darwin is liable for the full cost to defend against Hill's counterclaims, and it is not necessary for this court to further dissect the $668,068.38, which Loewinsohn represented as the total cost to defend, and which Judge O'Connor found.

Loewinsohn's declaration is fully applicable and details the full cost to defend for which Darwin has a duty to pay. Judge O'Connor used Loewinsohn's declarations as the starting point for his analysis. That the subsequent judgment involves different circumstances does not negate the applicability of Loewinsohn's declaration. Ultimately, the court cannot permit Plaintiffs to take a position inconsistent with that taken in the Hill lawsuit by arguing that the representations by Loewinsohn are incomplete.

### ii.     *Acceptance of the Previous Position*

Plaintiffs likewise satisfy the second factor for courts to consider when determining whether judicial estoppel is appropriate; that is, Plaintiffs convinced Judge Toliver and Judge O'Connor to

accept their previous position.   "The purpose of the prior success or 'judicial acceptance' requirement is to 'minimize[ ] the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate[ ] the corresponding threat to judicial integrity.'" *Hall*, 327 F.3d at 398.   "[W]hen a court 'necessarily accepted, and relied on' a party's position in making a determination, then the prior success requirement is satisfied." *Id.* (citations omitted).

Aldous successfully maintained her position in the *Hill* lawsuit, and the court accepted her position.   BAM submitted a joint motion to Judge O'Connor, seeking approval of their agreement to be bound by Judge Toliver's and Judge O'Connor's attorney's fees determination.   Joint Agreed Motion to Approve Agreement and Consent to Proceed  Before United States Magistrate Judge Toliver (Doc. 52), *Blue v. Hill*,  No. 10-cv-2269, 29 (N.D. Tex. Jan. 17, 2011).    In the Agreement, BAM and Hill agreed that they would submit the issue of attorney's fees to Judge Toliver; that they could appeal only to Judge O'Connor; and that they would not request an additional evidentiary hearing before Judge O'Connor. *See Blue v. Hill*, No. 10-2269 (N.D. Tex. January 17, 2011), Def.'s App.  13, Agreement 1, Ex. 1-B.  On January 18, 2011, Judge O'Connor accepted this joint agreement and wrote, "The Court hereby ORDERS that the Joint Agreed Motion to Approve Agreement (ECF No. 52) is well taken and is APPROVED and GRANTED and the COURT ORDERS all of its terms to be implemented."  Order Approving Agreement and Referral to United States Magistrate Judge Toliver (Doc. 56),  No. 10-2269 (N.D. Tex. Jan.18, 2011).

The record clearly reflects the court's acceptance of and reliance on Plaintiffs' prior position in the *Hill* lawsuit.  Aldous requested that Judge O'Connor accept BAM's agreement with Hill, and he accepted their agreement.  Thus, Plaintiffs requested to be bound by the fee determination made

by Judge Toliver and Judge O'Connor, and the court finds that Plaintiffs are so bound. Accordingly, the second factor for judicial estoppel is satisfied.

### iii.     Unfair Advantage

Plaintiffs would derive an unfair advantage if it was permissible for them to agree to be bound by the determinations of Judge Toliver and Judge O'Connor in one lawsuit and disavow those determinations in another lawsuit. Plaintiffs had every opportunity to dispute the cost of attorney's fees in the *Hill* lawsuit. Loewinsohn submitted a declaration asserting the attorney's fees relating to both the affirmative claims and defensive claims, and Plaintiffs cannot now disclaim their attorney's affidavit. *See* Memorandum Opinion and Order 29 (Doc. 379), *Blue v. Hill*, No. 10-2269 (N.D. Tex. December 31. 2011) ("Based on this Stipulation, the Court concludes that the Declaration and Supplemental Declaration of Alan Loewinsohn are sufficient evidence of BAM's expenses under the terms of the Stipulation.").

Judicial estoppel is proper. Plaintiffs' current position is clearly inconsistent with Aldous's previous position asserted in the *Hill* lawsuit. Moreover, Aldous encouraged the court to accept her previous position, and Plaintiffs will obtain an unfair advantage if the court permits them to take an inconsistent position in this action. The court cannot permit Plaintiffs to submit a stipulation and sworn affidavit from their attorney in an underlying matter, receive judgment in that action, and then argue that the defense expenses are an amount different from precisely what was already determined.

### b.     Whether Defendant Breached the Policy

Notwithstanding Defendant's judicial estoppel argument, the court determines that Defendant did not breach the contract as a matter of law because the terms of the Policy provide Defendant with discretion to determine reasonable claim expenses.

*i.*      *Plaintiffs' Arguments*

According to Plaintiffs, Defendant wrongly relied on the Billing Guidelines to refuse to pay for secretarial and IT overtime.  Pls.' Fourth Am. Compl. ¶ 17.  Plaintiffs contend that because the Billing Guidelines are not part of the Policy, Darwin breached the Policy.  Pls.' Mot. Summ. J. 14.

Additionally, Plaintiffs argue that Defendant wrongly used a 50/50 split to account for the cost of affirmative claims which Darwin believed was unrelated to its duty to defend.  In justifying its 50/50 fee split, Lizotte, the insurance examiner, stated that the affirmative and defensive claims involved bifurcated trials and that "it appears that the majority of the work done to date has been done in preparation for the April 18 hearing (which is strictly regarding the affirmative claims as bifurcated by the Court)."  Pls.'s App. 71, Ex. 7.  The adjuster conceded that the court ordered depositions that BAM could only take once and therefore concluded a 50/50 split between affirmative claims and Hill's counterclaims was "a fair allocation."  *Id.*  The adjuster further stated that to prosecute BAM's breach of contract claim, even if Hill never filed a counterclaim, BAM would still need to take many steps required by the defense and "that these issues are inextricably intertwined and hence why we determined that a 50/50 allocation would be fair and equitable." *Id.*

 According to Plaintiffs, Defendant's 50/50 allocation is erroneous because Loewinsohn already identified, and Darwin already deducted, the fees that were solely related to the affirmative claims.  For March and April 2011, Loewinsohn identified affirmative fee costs of $56,370 and $90,033.03.  Pls.' App. 71, Ex. 7. Plaintiffs maintain that the rest of the fees involved work that benefited both the defensive and affirmative claims, as the costs associated with building a defense also assisted the prosecution of the affirmative claims.

Plaintiffs argue that Defendant's 50/50 split is analogous to an insurer allocating costs between covered and uncovered claims, which is prohibited under Texas law. Plaintiffs draw this analogy from their reading of the Texas Supreme Court's denial of reimbursement in *Texas Association of Counties County Government Risk Management Pool v. Matagorda County*, 52 S.W.3d 128 (Tex. 2000). In *Matagorda County*, an insurance company agreed to defend its insured and eventually settled the claim on behalf of its insured. *Id.* at 130. After the settlement, however, the insurer won its declaratory judgment action that the insured's claim was *not covered* and sought reimbursement. The Texas Supreme Court did not permit reimbursement, finding that the reimbursement rights were not provided for in the contract; that the insured did not impliedly consent to reimburse the insurer; and that the law did not impose an equitable reimbursement obligation. *Id.* at 131.

*Matagorda County* is distinguishable from the facts of this case. Plaintiffs raise this argument in an attempt to collect more money from Defendant.[6] Thus, the analogy that Plaintiffs attempt to draw is unpersuasive, as they argue that Defendant made improper deductions from the amount that it paid and not that it is wrongly seeking reimbursement. *Matagorda County* instead further emphasizes that it is the agreement between the parties that defines their obligations. Thus, the provisions in the Policy govern the dispute, and for the reasons explained below, Plaintiffs have to failed to show that they are entitled to summary judgment with respect to their breach of contract claim.

---

[6] Defendant also counters and seeks reimbursement, but Plaintiffs raise this argument with respect to its affirmative claim for breach of contract.

**Memorandum Opinion and Order- Page 24**

*ii.     The Policy*

The Policy requires that Darwin pay claim expenses that its "insured becomes legally obligated to pay" and " all reasonable Claim Expenses arising from the Claim." Pls.' App. 15, 22, Ex. 2.  Claim Expenses are further defined as "reasonable fees, costs and expenses charged by attorneys retained or approved by the Insurer for a Claim brought against an Insured" and "reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim . . . ." Pls.' Mot. Summ. J. 11 (citing Pls.' App. 16, Ex. 2).  The Policy, however, states that "[t]he determination by the Insurer as to the reasonableness of Claim Expenses shall be conclusive on all Insureds." Pls.' App. 17, Ex. 2.

The terms of the Policy explicitly permit Darwin to determine the reasonableness of the Claim Expenses and hold that such a determination is conclusive as to Plaintiffs, the insureds. Plaintiffs argue that coverage would be illusory if Darwin could freely make any deduction it chose; however, this argument is no more than an afterthought.  "A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010); *see also  M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 936 (2015) ("That doctrine instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract.") (citation omitted); *Harris v. Blockbuster Inc.*, 622 F. Supp. 2d 396, 398 (N.D. Tex. 2009) (determining whether an arbitration provision in a contract was illusory and stating that "[i]n Texas, a contract must be supported by consideration, and if it is not, it is illusory and cannot be enforced."); and *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807 (Tex. App.    El Paso 2012, rehearing

overruled) ("A promise which does not bind the promisor, as when the promisor retains the option to discontinue performance, is illusory.") (citations omitted).

The record in no way intimates that the Policy is illusory. On the one hand, Plaintiffs argue that the Policy is illusory, and on the other, they seek to enforce it as a binding contract. Plaintiffs readily acknowledge the validity of the insurance contract in their attempt to recover additional defense expenses and enforce what they perceive as their rights under the Policy. Essentially, Plaintiffs are seeking favorable treatment from the court to protect them from a provision within the bargained-for contract. Accordingly, Plaintiffs are not, in truth, arguing that the contract is illusory. They are attempting to enforce the Policy as a valid contract on the whole, while, at the same time seeking to excise one agreed-upon provision in the Policy that is less favorable to them.

The court is not interpreting the Policy in a manner that would permit Defendant to arbitrarily determine the Claim Expenses. The contract and application of the disputed provision might be illusory if there were no bargained-for exchange; however, the record does not reflect that the consideration was so insubstantial as to be illusory. In this instance, the court is unwilling to rewrite the terms of the Policy and disregard deductions made by Defendant based upon a hypothetical fear that Darwin will abuse the provision without any evidence in the record showing that Plaintiffs have effectively received no consideration.

Plaintiffs additionally argue that, although the Policy permits Darwin to make determinations as to the reasonableness of Claim Expenses, Darwin did not make such a determination when it reduced Aldous's invoices. Instead, notwithstanding this provision in the Policy, Darwin based its deductions on the Billing Guidelines and an arbitrary 50/50 fee split between defensive and

affirmative claims.[7]  Darwin's stated reasons for making the deductions demonstrate that it did not

arbitrarily make these deductions but rather made a determination as to the reasonableness of the

Claim Expenses, as permitted by the Policy, according to reasonable considerations, such as its

Billing Guidelines and the fact that it did not have a duty to pay for attorney's fees associated with

BAM's affirmative claims.

The court determines that Plaintiff is not entitled to summary judgment on its breach of

contract claim.  The Policy permits Defendant to make deductions, and  "[t]he determination by the

Insurer as to the reasonableness of Claim Expenses shall be conclusive on all Insureds."  Pls.' App.

17, Ex. 2.  The evidence offered by Plaintiffs does not establish that Defendant breached the Policy

as a matter of law.  In fact, as the preceding section demonstrates, Defendant is entitled to summary

judgment on Plaintiffs' breach of contract claim because it has already paid one third of the defense

expenses owed.

### B.     Defendant's Counterclaims

Darwin asserts counterclaims against Plaintiffs for: (1) breach of contract/anticipatory breach;

(2) unjust enrichment; (3) money had and received; and (4) misrepresentations.  It also seeks a

declaratory judgment, attorney's fees, and the imposition of a constructive trust.

---

[7]  Defendant did not respond to these arguments and instead relies on the grounds it raises in its motion for summary judgment on Plaintiffs' breach of contract claim, discussed in III(A) of this opinion.  Defendant states:

> Aldous's complaints regarding Darwin "imposing" its Billing Guidelines or purportedly refusing to pay 50% of the defense costs (see Motion at 14-15) should be ignored in light of the indisputable summary judgment evidence that Darwin paid more than the one-third of the sworn amount of the "reasonable and necessary fee for the defense of Counterclaims brought by Hill III" against BAM that supported Aldous's judgment.

Def.'s Mot. Summ. J. 15-16.

**Memorandum Opinion and Order– Page 27**

### 1.      Darwin's Breach of Contract Claim

Defendant argues that there is no genuine dispute of material fact as to its breach of contract claim against Plaintiffs.  Defendant contends that Aldous's refusal to pay it money from the Hill judgment constitutes a breach of the Policy, as "Aldous is impairing Darwin's subrogation rights, failing to cooperate with Darwin in exercising its subrogation rights and jeopardizing or prejudicing those rights by failing to pay Darwin for the amount of Claim Expenses that Darwin paid on Aldous' behalf."  Def.'s Mot. Summ. J. 32.  Plaintiffs move for summary judgment on Darwin's breach of contract claim, arguing that the anti-subrogation rule bars Defendant's suit against them.  While Darwin requests that the court grant summary judgment on its breach of contract claim, it devotes most of its motion arguing that Plaintiffs are not entitled to summary judgment.  Because Plaintiffs' argument is dispositive, the court addresses its motion first.

### a.      Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that they are entitled to summary judgment on Defendant's breach of contract claims, as the law does not permit an insurer to bring such a claim against its insured.  The anti-subrogation rule prohibits "an insurer [from suing] its own insured on the insurance policy."  *U.S. v. St. Bernard Parish*, 756 F.2d 1116, 1127 (5th Cir. 1985).  "An insurer cannot by way of subrogation recover against its insured or an additional assured any part of its payment for risk covered by the policy."  *Peavey v. M/V ANPA*, 971 F.2d 1168, 1177 (5th Cir. 1992) (citations omitted).  Defendant argues that it "is not pursuing a subrogation claim against Aldous" but rather is suing Aldous for jeopardizing, prejudicing, and terminating Darwin's subrogation rights against Hill.  Def.'s Mot. Summ. J. 34.  In any event, by suing for breach of contract, Darwin necessarily seeks recovery under the Policy from its insured.  The anti-subrogation rule, however, squarely

**Memorandum Opinion and Order- Page 28**

prohibits Defendant's action, and the court is bound by the law of this circuit. *See Peavey*, 971 F.2d at 1177 ("This Circuit has overwhelmingly upheld the fundamental principle of insurance law which states that an insurer may not sue its own insured to recover under the insurance policy."). Accordingly, the court will deny Defendant's Motion for Summary Judgment on its breach of contract claim and grant Plaintiffs' Motion for Summary Judgment on Defendant's breach of contract claim.

### 2. Unjust Enrichment and Money Had and Received

Plaintiffs and Defendant request summary judgment on Defendant's claims for unjust and enrichment and money had and received. Plaintiffs argue that, as a matter of law, Defendant cannot bring claims of unjust enrichment and money had and received against them. On the other hand, Defendant asserts that the record establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law on these claims.

### a.    Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that the anti-subrogation rule bars Defendant's claims for money had and received and unjust enrichment and therefore entitles them to summary judgment and dismissal of Defendant's claims. Defendant argues that the anti-subrogation rule does not apply, as it is suing Plaintiffs for interfering with its subrogation rights against Hill.

Courts have recognized exceptions to the anti-subrogation rule. "While public policy does not allow an insurer to sue its own assured on the insurance policy, the law recognizes that there may be causes of action by an insurer outside the policy." *St. Bernard Parish*, 756 F.2d at 1127. This, however, is a narrow exception. In *St. Bernard Parish*, the United States assumed a role similar to a private insurer under the National Flood Insurance Program (NFIP). *Id.* at 1124 ("We can perceive

no reason the NFIP should be seen as operating differently now that the federal government has displaced private insurance companies."). The United States sued certain parish defendants to recover for "any property the parishes owned and insured under the NFIP," because the parishes violated their contractual and regulatory obligations. *Id.* at 1119. The court held that "none of the claims that may be articulated in subrogation actions against the parishes are available to the United States as an insurer," but that there was a "very narrow nature of the causes of action available to the United States against the parishes for the value of the property owned and insured under the NFIP . . . ." *Id.* at 1128. Fraud has "traditionally been recognized at common law as a means of recovery from the insureds by their insurers," but the court declined to hold at that stage "that this will be the only non-subrogation action available to the United States." *Id.* In holding that the United States had a common law remedy against their insured, the court reiterated "any applicable causes of action at common law which do not violate the fundamental insurance law principles of recovery . . . remain available." *Id. St. Bernard*, however, did not state which common law remedies were available.

*Peavey* provides further direction regarding the scope of the anti-subrogation rule. *Peavey* held that the anti-subrogation rule did not bar an insurer's action against its insured for damages it sustained by the insured's failure to give it proper notice. 971 F.2d at 1176-77. The court held that the insurer's "suit against [its insured] is not one of subrogation but one of reimbursement." *Id.* at 1177. The court further recognized that the law recognizes an exception to the anti-subrogation rule, and that "there may be causes of action by an insurer outside the policy." *Id*. (citation omitted). The insurance company in *Peavey* sued outside the policy, as its claim "was not that, under the terms of the policy, [the insured] was responsible for payment of the losses and expenses." *Id.*

Reimbursement sought by an insured is often permitted even where subrogation is forbidden. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 656 (5th Cir. 2004). *Adams* determined that "an insurer may bring a reimbursement action against its insured for recovered property or an insurer's overpayment for losses, even where subrogation action is forbidden." *Id.* In *Adams*, the court held that once an insurance company, UMS, paid for its insured's loss, it would be able to recover from another of its insured, AK Steel. *Id.* at 656. AK Steel argued that an insured is generally prohibited from subrogation its insured and therefore UMS would never be entitled to recover from it. *Id.* Relying on *Peavey*, the court held that, once UMS paid its share of the loss to its insured, UMS would be entitled to recover from AK steel, because "AK Steel suffered no loss and was unjustly enriched at the expense of [Plaintiff] . . . ." *Id.*

Plaintiffs cite *Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools*, 246 S.W.3d 42 (Tex. 2008), in support of their contention that Defendant is not entitled to bring equitable causes of action against them, as the Policy controls their disputes. In *Excess*, the insurance company paid a claim that was later determined to be uncovered and sought reimbursement from its insured. *Id.* at 44-45. The court refused to impose an extra-contractual right to reimbursement, in part, because "a valid agreement already addresse[d] the matter," and "recovery under an equitable theory is generally inconsistent with [an] express agreement." *Id.* at 67 (citation omitted). Because the parties spelled out their "obligations in great detail," " [t]o recognize an equitable right to reimbursement would require [the court] to 'rewrite the parties' contract [or] add to its language.'" *Id.* at 50 (citation omitted).

*Excess Underwriters* and its predecessor *Matagorda County*, cited in Section III(A)(2)(b)(i) of this opinion, involve what the court refers to as the "settlement-reimbursement question" and

discuss policy concerns regarding the settlement process and held that the theories of quantum merit and unjust enrichment "do not apply in the circumstances presented." *See Matagorda*, 52 S.W.3d at 134 ("[T]he few courts that have considered the settlement-reimbursement question have generally opted to recognize a reimbursement right only if the insured has authorized the settlement and agreed to reimburse the insurer should the insurer prevail on its coverage defense."). These cases involve payment of claims that are later determined to be uncovered, and the court ultimately decided that the insurer should bear the risk if it settles before coverage is adjudicated.

Darwin's claim for money had and received is a claim outside the Policy and falls within the narrow exception that permits an insurer to bring causes of action against its insured. Darwin is seeking to prevent Plaintiff from recovering a windfall and is permitted to seek equitable remedies to recover the cost of the defense.

Both parties agree that Defendant had a duty to defend; thus, *Matagorda County* does not apply. What is disputed is the amount Defendant is obligated to pay under the policy. Neither *Excess Underwriters* nor *Matagorda County* provides this answer. They also do not prevent Defendant from seeking recovery from Aldous for the recovered portion of the judgment representing the fees it paid, as money had and received constitutes a cause of action arising outside the Policy. Accordingly, Plaintiffs have failed to show that Defendant cannot recover as a matter of law on its claim for unjust enrichment and money had and received; and the court will deny Plaintiffs' Motion for Summary Judgment on these claims.

### b.    Defendant's Motion for Summary Judgment

Defendant also requests summary judgment on its claim for unjust enrichment and money had and received, arguing that there is no genuine dispute of material fact that Aldous has been

unjustly enriched by her wrongful retention of the portion of the judgment that Defendant paid in defense expenses and that Aldous is therefore holding money that rightfully belongs to it.

As a preliminary matter, the court does not believe the anti-subrogation rule bars Defendant's claim for unjust enrichment and money had and received.   Plaintiffs argue that the anti-subrogation rule bars recovery, but, for reasons stated in the preceding section, the court finds that the anti-subrogation rule does not bar this equitable claim.   As an extension of this argument, Defendant maintains that the subrogation provisions in the Policy do not prevent its recovery from Plaintiffs, while Plaintiffs argue it precludes any cause of action against them. The relevant portions of the Policy state:

> The Insurer shall be subrogated to all Insureds' rights of recovery against any person or organization. All Insureds shall assist the Insurer in effecting any rights of indemnity, contribution and apportionment available to any Insured, including the execution of such documents as are necessary to enable the Insurer to pursue claims in the Insureds' names and shall provide all other assistance and cooperation which the Insurer may reasonably require.  All Insureds shall cooperate with the Insurer and do nothing to jeopardize, prejudice or terminate in any way such rights.
>
> The Insurer shall not exercise any such rights against any Insured except as provided herein. Notwithstanding the foregoing, however, the Insurer reserves the right to exercise any rights of subrogation against any Insured with respect to any Claim brought about or contributed to by the intentional, criminal, fraudulent, malicious or dishonest act or omission of such Insured.

Pls.' App. 28, Ex. 2 .  This provision does not preclude Darwin from seeking remedies outside the Policy.  The provision limiting Darwin's causes of action against Plaintiffs apply to Darwin's right of subrogation against Plaintiffs, which is limited to the narrow set of circumstances described therein.  Plaintiffs acknowledge that these provisions involve subrogation rights, and state that "the Policy expressly prohibits Darwin from seeking subrogation against its Insured: 'The Insurer *shall not* exercise any such [subrogation] right against any Insured except as provided herein.'" Pls.' Mot.

Summ. J. 28 (citing Pls.' App. 28, Ex. 2). In light of these provisions, the court granted Plaintiff's

motion for summary judgment on Defendant's breach of contract claim. Its claim, however, for

money had and received is not a subrogation claim and is outside of the policy. Therefore, the court

must determine whether there is a genuine dispute of material fact concerning Defendant's claim for

money had and received.

"[A]n action for money had and received is proper when the money or property is retained

wrongfully." *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951); *Mims v. Stewart Title Guar. Co.*,

521 F. Supp. 2d 568, 574 (N.D. Tex. 2007) ("A cause of action for money had and received 'arises

when a party obtains money which in equity and good conscience belongs to another.'"); *see also*

*Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) (stating

that the claims for unjust enrichment and money had and received "arise out of the equitable

principle of preventing unjust enrichment.")[8] "[All a plaintiff needs to show is that the defendant

holds money 'that in equity and good conscience belongs to the plaintiff.'" *Verison EDP. Benefits*

*Comm. v. Frawley*, No. 05-2105, 2007 WL 2051113, at *4 (N.D. Tex. 2007) (citation omitted). The

doctrine is not based on any wrongdoing on the part of the defendant "but looks only to the justice

of the case and inquires whether the defendant has received money which rightfully belongs to

---

[8] Defendant includes unjust enrichment and money had and received in the same section in its motion for summary judgment but separates the causes of action in its Third Amended Answer and Counterclaim. Because Defendant's claims for unjust enrichment and money had and received both seek restitution, the court treats unjust enrichment as the theory for which Plaintiffs are liable under Defendant's claim for money had and received. *See Chapman v. Commonwealth Land Title Ins. Co.,* 814 F. Supp. 2d 716, 724-26 (N.D. Tex. 2011) (holding that unjust enrichment is not an independent cause of action under Texas law); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) ("unjust enrichment is a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received."). "Because Texas law does not afford an independent cause of action for unjust enrichment," Defendant cannot simultaneously maintain claims for money had and received and unjust enrichment. *Hancock*, 635 F. Supp. 2d at 561. Accordingly, the court will grant summary judgment and dismiss Defendant's claim for unjust enrichment.

**Memorandum Opinion and Order- Page 34**

another." *Mims*, 521 F. Supp. 2d at 574.  The Fifth Circuit summarizes the law governing claims for money had and received as follows:

> The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.

*Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (citations omitted).

Here, there is no dispute that Plaintiff received money for defense expenses from Defendant and received a judgment from Hill for the same defense expenses.  A portion of that money, according to Defendant, rightly belongs to it.   As the deposition testimony demonstrates, Aldous was aware that she received payment for the same services twice:

> Q. And do you understand that it's Darwin's position that if you don't reimburse the amounts that Darwin has paid and which you've also recovered from Hill, III, that you're, in effect, being paid twice for the same expense?
>
> A. I understand -- I believe that's Darwin's claim.
>
> Q. And that's true, isn't it, you -- Darwin has paid Mr. Loewinsohn and now Mr. Hill has paid Mr. Loewinsohn for the same thing?
>
> A. **That's true.**

Def.'s Mot. Summ. J. 32 (citing Def.'s App. 117-18, Ex. 1-H).

Plaintiffs instead argue that Aldous bore more risk and that the judgment compensates her for the time she spent working on the case.  What Plaintiffs deem the "tremendous cost of Plaintiffs' pursuing affirmative claims" includes Aldous's time, her colleague's time, and the fees and expenses paid to Loewinsohn.  Pls.' Reply 15. According to Plaintiffs, "Ms. Aldous only recovered this so-called 'windfall' by spending hundreds of thousands of her own dollars and investing hundreds of thousands of dollars of her firm's own time in pursuing the *affirmative fee claim*" and that "before

**Memorandum Opinion and Order- Page 35**

Darwin could recover a dime of Defense Expenses, equity would require Darwin to reimburse Plaintiffs for what it cost to obtain the recovery."[9] Pls.' Resp. 3 (emphasis added). "Any equitable recovery by Darwin must take these costs into consideration, and the total value of Plaintiffs' efforts far exceeds Darwin's total expenditures to date."[10] Pls.' Reply 16.

While Loewinsohn, in his first declaration to the court, recognizes that, his "firm was assisted greatly by lawyers with BAM" and without their help his hours would have been higher, Darwin never agreed to hire Aldous's law firm to defend against Hill's counterclaims. Darwin's reservation of rights letter makes clear that it intended to hire Loewinsohn and his firm, LFD, by stating, "Aldous Law Firm has requested and Darwin has agreed to the retention of Alan Loewinsohn . . . to defend this matter, subject to the firm's fee arrange with Darwin and its adherence to Darwin's Billing and Reporting Guidelines." Pls.' App. 64. Moreover, the record does not indicate that Aldous discussed receiving her own compensation from Darwin; instead, Aldous's own declaration states, "Darwin finally agreed to the retention of Mr. Loewinsohn *as defense counsel* and agreed that it would pay Plaintiffs' one-third share of LFD's attorney's fees and expenses. . . ." Aldous Decl. 4, Pls.' App. 4 (emphasis added). Plaintiffs' summary of Aldous's agreement with Darwin indicates that neither party contemplated that Darwin's duty to defend would include work done by Aldous, and no reasonable inference can be drawn that the parties intended such to occur. Aldous submitted invoices to Darwin seeking payment for *Loewinsohn's* services, and moreover, stated, "[W]e

---

[9] Plaintiffs make this argument after first asserting that Defendant is not entitled to equitable relief at all.

[10] Plaintiffs also argue that:

> The cost of Ms. Aldous' time, Mr. Walker's time [an associate at Aldous' law firm], and the fees and expenses paid to LFD for pursuing the affirmative claim (prior to the assertion of Hill III's Counterclaims) totals at least $737,800, which exceeds the amount of $502,364.59 that Darwin alleges it has spent defending the Counterclaims by more than $235,000. . . . Darwin claims that it should be a full beneficiary of this work *for free*."

Pls.' Resp. 16.

**Memorandum Opinion and Order- Page 36**

(Aldous) are only responsible for a third of the fee and expenses and therefore *you will only be responsible* for 1/3 of the fee and expenses." Pls.' App. 4, 54; *see also* Pls.' App. 71 (demonstrating that Darwin's questions whether its payment for defense expenses "should be reimbursed to your firm or whether it should be paid directly to the Loewinsohn Firm."). The record does not indicate an intent by *either* party to include work done by Aldous in the payment for the defense, and every communication in the record points to Darwin's duty to pay for the defense expenses incurred by Loewinsohn.

Plaintiffs attempt to raise a genuine dispute of material fact is unavailing. Darwin does not have a duty to pay for work done on Plaintiffs' affirmative claims, nor should Darwin pay for the time Aldous chose to invest in the *Hill* lawsuit. In her declaration, Aldous asserts that "ALF's attorneys have provided valuable services to assist and reduce the work that LFD needed to perform and to advance the likelihood of success against Hill III's Claims." Pls.' Resp. App. 3, Aldous Decl. 3. Aldous acknowledges that she seeks fees for work done before Hill even filed his counterclaims, and, although Hill did not file his counterclaims until February 2011, her declaration "quantifies the value of some of ALF's services during the period November 2010 through May 2012." *Id.* at 2-3 ("Additionally, prior to the assertion of Hill III's Claims, ALF devoted numerous hours to prosecuting the Fee Claim."). Darwin's RoR explicitly states that it is not liable for expenses incurred before it received notice. Pls.' App. 64 ("[A]ny charges incurred to date by defense counsel, prior to our receipt of the notice of this claim (February 18, 2011), will not be covered . . . ."); *see also* Pls.'App. 27 ("The Insured, as a condition precedent to this Policy, shall, as soon as practicable and no later than sixty (60) days after the termination of the Policy Period, provide Notice to the Insurer of any Claim made against an Insured during the Policy Period.").

**Memorandum Opinion and Order- Page 37**

Aldous and her colleague were not the attorneys of record in the *Hill* lawsuit and were not entitled to a portion of the judgment that awarded attorney's fees.  The principle behind attorney's fees is to compensate the attorney of record, and Plaintiffs cite no binding authority to show otherwise.  Defendant has a duty to defend under the Policy and a right to recover the portion of the judgment that represents the amount of defense expenses it paid.[11]  Had Plaintiff not received money from Hill, Defendant would be able to sue Hill for subrogation and recover the cost of defense.

The court finds Plaintiffs' argument that they are entitled to a portion of the judgment based on the work performed by Aldous unavailing.  Judge O'Connor determined that the cost to defend against Hill's counterclaims was $668,068.31, and Defendant has already paid $502,364.59.  Lizotte Decl. 2, Def.'s App. 126, Ex. 2.  Plaintiffs acknowledge that Defendant is only liable for one third of the total defense expenses, as Aldous only had an obligation to pay one third of the cost for BAM's legal defense.  Pls.' App. 54 ("[W]e (Aldous) are only responsible for a third of the fee and expenses and therefore you will only be responsible for 1/3 of the fee and expenses.").

Plaintiffs received compensation for attorney's fees from Darwin, and received money from the judgment issued in *Hill* lawsuit for those same attorney's fees.  Accordingly, there is no genuine dispute of material fact regarding Defendant's claim for money had and received.

As to the defensive costs, because Darwin does not have a duty to pay for BAM's affirmative claims, it is also not entitled to the portion of the judgment compensating Loewinsohn for his work on the affirmative claims.  Judge O'Connor, in awarding attorney's fees, held Hill liable for only $532,381.93 of the defense expenses, because he excluded from his judgment the attorney's fees associated with Hill's counterclaim for professional negligence.  Memorandum Opinion and Order

---

[11] "The Insurer shall be subrogated to all Insureds' rights of recovery against any person or organization."  Pls.' App. 28, Ex. 2.

**Memorandum Opinion and Order- Page 38**

(Doc. 379) at 29, *Blue v. Hill*, No. 10-2269 (N.D. Tex. Dec. 31, 2011).   The cost to defend the professional negligence claim, including attorney's fees and expenses, was $135,686.38.   Thus, Judge O'Connor awarded the full cost of the defense, $668,068.31, less the $135,686.38  to defend against the professional negligence counterclaim, which amounted to a total of $532,381.93.

Darwin has a duty to pay for the full cost to defend and is thus also liable for the attorney's fees incurred defending against the professional negligence claim.  *See* Def.'s Mot. Summ. J. 17 ("The Policy expressly provides that Darwin has the right and duty to defend Claims made *against* Aldous. . . ."); Pls.' App. 16 ("Claim means . . . any civil proceeding in a court of law . . . made to or against any Insured seeking to hold Insured responsible for damages for a Wrongful Act.").

Purportedly recognizing this, Darwin asserts, "Aldous should be ordered to reimburse Darwin $457,135.80, which represents its payment for the fees and expenses incurred in the defense of the Fee Counterclaim for which Aldous has been paid twice (excluding professional negligence)." Def.'s Mot. Summ. J. 36.  Although Darwin acknowledges that it is entitled to less than the full amount it has already paid,  $502,364.59, the manner in which Defendant arrived at $457,135.80 figure is unclear.  Defendant does not present any explanation for its calculation.  Accordingly, a genuine dispute of material fact remains regarding the amount of the judgment wrongly retained by Plaintiffs.

 Defendant is entitled to summary judgment on its money had and received claim in so far as liability is concerned, as there is no genuine dispute of material fact that Plaintiffs have retained a portion of the judgment to which Defendant is entitled.  A genuine dispute of material fact remains, however, regarding the amount owed by Plaintiffs.

### 3.    Defendant's Claim for Misrepresentations

Plaintiffs argue that Defendant has no evidence to support its misrepresentation claim and urges the court to grant its motion for summary judgment and dismiss the claim.  Defendant does not move for summary judgment on its misrepresentation claim and, instead, it argues that it has raised sufficient evidence to defeat Plaintiffs' motion for summary judgment.

Defendant alleges that Aldous made "misrepresentations in the course of her business and in a transaction in which Aldous had an interest, supplied false and misleading information for Darwin's guidance, and did not exercise reasonable care or competence in obtaining or communicating the information." Def.'s Third Am. Answer ¶¶ 40-42.  Alternatively, Darwin asserts that Aldous knowingly or recklessly made misrepresentations that were false. *Id.*[12]   In either case, it asserts that Darwin relied on Aldous's representation and was damaged as a result.

The Texas Supreme Court has articulated the requirements for a negligent misrepresentation claim as follows:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

There is a genuine dispute of material fact as to whether Aldous made material representations that resulted in pecuniary loss to Defendant.  Defendant argues that, in the course of

---

[12]   To the extent that Defendant attempts to bring a claim for fraudulent misrepresentation, it fails, as its pleadings do not satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires fraud claims "to state with particularity the circumstances constituting fraud."  Given the age of this case, the proximity to the trial setting, the expiration of the deadline to amend pleadings, and the number of times Darwin has amended its pleadings, the court will permit no further amendment of pleadings to state a claim upon which relief can be granted with respect to the fraudulent misrepresentation claim.

negotiating whether Darwin should hire Loewinsohn, Aldous made certain representations that ultimately led to Defendant hiring Loewinsohn rather than the attorney it originally planned.  Darwin relies on a declaration submitted by Lizotte, the claims examiner who worked with Aldous.

According to Lizotte, Darwin made the following representations:

(a) she was fully responsible for having selected her choice of counsel and that Darwin was in no way responsible for any action taken by her choice of counsel; (b) Darwin was responsible for only one-third of the hourly rate of her choice counsel; (c) her counsel would prepare separate bills for the prosecution of her affirmative claims and the defense of counterclaims against her in the Fee Lawsuit; (d) she would maintain sole financial responsibility for the fees and expenses of her affirmative claims; (e) her counsel would comply with Darwin's billing and reporting guidelines, and Darwin would have the right and opportunity to review bills for compliance with those guidelines; (f) Darwin would be reimbursed any fees and expenses that it paid on her behalf if awarded in the Fee Lawsuit to the extent of her recovery; and (g) she and her counsel would honor the terms and conditions of the Policy's insuring agreement.

Def.'s Mot. Summ. J. 39-40 (citing Def.'s App. 126, Ex. 2).  Darwin also argues that Aldous's statements that "she can 'agree to disagree about the split for the time being'" provides further evidence of her misrepresentations. Def.'s Mot. Summ. J. 40.  Furthermore, in an e-mail to Lizotte, Aldous stated:

I am confirming that I am fully responsible for having selected Mr. Loewinsohn to defend the counterclaims asserted against me and my law firm; the carrier is in no regard responsible for any action taken by Mr. Loewinsohn; that any fees and expenses recovered will be reimbursed to the carrier in the same proportion as any fees and expenses paid by the carrier bear to those incurred by me to date; and that Mr. Loewinsohn and I will in all other respects honor the terms and conditions of the insuring agreement.

Pls.' App. 58, Ex. 4.

Plaintiffs contend that while the statements alleged by Defendant constitute an offer, Defendant rejected the offer and they "never matured into an agreement." Pls. Mot. Summ. J. 31;

Pls.' Reply 23.  Plaintiffs derive this argument from Lizotte's response to Aldous's e-mail in which she states:

> Please note that we will agree to his continued retention [sic] light of the amount of documentation involved in this matter and the time constraints with the upcoming April 18 hearing, however, I have several conditions that will need to be addressed/discussed . . . .

Pls.' App. 56, Ex. 4.

Plaintiffs consider the excerpted portion of Lizotte's e-mail as a rejection of Aldous's offer that offsets any prior representation made by Aldous.  The court, however, finds that Darwin has raised sufficient fact issues regarding the alleged misrepresentations by Aldous.  Lizotte's affidavit and Aldous's e-mails are evidence that Aldous made representations to Darwin regarding its retention of Loewinsohn to defend against Hill's counterclaims, and Plaintiffs' contention that Aldous's statements merely constitute a rejected offer does not extinguish a genuine dispute of material fact regarding these representations.

Plaintiffs also contend that Defendant has not presented evidence that it was damaged by the alleged misrepresentations.  Darwin argues that, based on these representations, it agreed to hire Loewinsohn.  Def's Mot. Summ. J. 40.  As a result, "Darwin has been damaged in the amount of fees that Aldous refuses to reimburse, as well as the costs of this lawsuit."  *Id.*  Darwin presents sufficient evidence to create a genuine dispute of material fact regarding the alleged damage it suffered.  Accordingly, there is a genuine dispute of material fact as to Defendant's negligent misrepresentation claim, and Plaintiff is not entitled to judgment as a matter of law on this claim.

### 4.    Declaratory Judgment

Defendant urges the court to grants its motion for summary judgment on its request for

declaratory relief and states[13]:

> (a) that Aldous failed to comply with the conditions upon which Darwin relinquished
> its right to select defense counsel and consented to Aldous' choice of counsel; (b) the
> legal and proper ownership of the claim asserted by Aldous against Hill and the rights
> for any recoveries pursuant to the district court's judgment in favor of Aldous; (c)
> that the Policy's subrogation provisions apply to the amounts that Darwin paid on
> behalf of Aldous; (d) that the Policy's subrogation provisions are fully enforceable
> and afford legal rights to Darwin to any recoveries made by Aldous in the Fee
> Lawsuit; and (e) the extent to which Darwin has overpaid fees and expenses that
> Aldous incurred in the defense of the Fee Counterclaim.

Def.'s Mot. Summ. J. 36-37.

Because the court will dismiss Darwin's breach of contract claim and its remaining claims

have genuine disputes of material fact, declaratory judgment is not appropriate under these

circumstance.   Accordingly, the Defendant has no right to declaratory relief at this time.

### 5.    Attorney's Fees and Constructive Trust

Plaintiffs also urge the court deny Defendant's requests for attorney's fees and imposition

of a constructive trust.   A determination of attorney's fees is premature, as the court determines

attorney's fees postverdict pursuant to Federal Rule of Civil Procedure 54(d)(2)(B).   Likewise,

Defendant's request for an imposition of a constructive trust is a request for an equitable remedy that

is properly determined postverdict.   Accordingly, the court **denies without prejudice** Plaintiffs'

requests at this time.

---

[13] The case on which Defendant relies, *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 646 (Tex. 2007) (involving the question of whether an insured must first be made whole before the insurer can be reimbursed when contracting language would lead to a result different from the equitable made whole doctrine), does not apply.   Defendant's argument that it has a lien on the proceeds based on *Texas Health Insurance Risk Pool v. Sigmundik*, 315 S.W.3d 12, 14 (Tex. 2010) (holding that "[u]nder *Fortis Benefits*, the 'made whole' doctrine is inapplicable in this case," because the insurer had a contract-based lien on any recovery),  is also unpersuasive.

## IV.    Conclusion

### A.        Plaintiffs' Breach of Contract Claim

For the reasons stated herein, the court **determines** that there is no genuine dispute of material fact as to Plaintiffs' claim for breach of contract.  Accordingly, the court **denies** Plaintiffs' Motion for Partial Summary Judgment with respect to its claim for breach of contract and **denies** its request for a declaratory judgment.  The court **grants** Defendant's Cross-Motion for Summary Judgment on Plaintiffs' breach of contract claim and **dismisses with prejudice** this claim.

### B.        Defendant's Affirmative Claims

The court **determines** that  no genuine dispute of material fact exists with respect to Defendant's breach of contract claim.  Accordingly, the court **denies** Defendant's Cross- Motion for Summary Judgment as to its claim for breach of contract.  The court **grants** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's breach of contract claim and **dismisses with prejudice** this claim.  Furthermore, because unjust enrichment is not an independent cause of action in Texas, the court **grants** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's unjust enrichment claim and **dismisses with prejudice** this claim.  The court **determines** that no genuine dispute of material fact exists as to Defendant's claim for money had and received, and **grants** Defendant's Cross-Motion for Summary Judgment on its claim for money had and received as to liability; however, a genuine dispute of material fact remains regarding the amount Plaintiffs owe Defendant.

Additionally, the court **determines** that there are genuine disputes of material fact as to Defendant's claim for negligent misrepresentations and **denies** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's misrepresentation claim.

**Memorandum Opinion and Order- Page 44**

Based on the court's rulings within this opinion and the court's Memorandum Opinion and Order partially granting Defendant's Motion to Dismiss, Plaintiffs' claim under the Texas Insurance Code § 542 remain; Defendant's claim for negligent misrepresentation remains, as well as the amount of damages with respect to Defendant's claim for money had and received. As these are the only claims remaining, it seems to the court that reason should prevail and the parties ought to be able to resolve these issues without the necessity of a trial.

*This litigation has been unnecessarily contentious and costly, and it is time to bring the matter to a close. If this case proceeds to trial, the parties are duly warned that the court will not allow any issue that has been dismissed to be retried, and any attempt by the parties to circumvent or a do an "end-run" around the court's prior rulings by injecting issues that are no longer a part of this case will not be tolerated.*

**It is so ordered** this 9th day of March, 2015.

Sam A. Lindsay
United States District Judge